

Opinions of the United
States Court of Appeals
for the Third Circuit

1-27-1995

# Green v INS

Precedential or Non-Precedential:

Docket 94-3193

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Green v INS" (1995). *1995 Decisions.* Paper 25.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/25

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————————

NO. 94-3193

—————————————

BIBI FAZALLAH GREEN
Petitioner

v.

IMMIGRATION AND NATURALIZATION SERVICE
Respondent

—————————————

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS

(No. A23 346 457)

—————————————

Argued October 31, 1994
BEFORE: GREENBERG and McKEE, Circuit Judges, and
POLLAK, District Judge[*]

(Filed: January 27, 1995)

Robert S. Whitehill (argued)
Deasy & Whitehill
1906 Law & Finance Building
Pittsburgh, PA  15219
Attorney for Petitioner

Jane Gomez (argued)
David J. Kline
Carl H. McIntyre, Jr.
Alice M. King
United States Department of

Justice
Office of Immigration Litigation
Post Office Box 878

---

[*].  The Honorable Louis H. Pollak, United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

                            Washington, DC  20044
                                Attorneys for Respondent


_____

OPINION OF THE COURT
_____

POLLAK, District Judge.

        This case is about the negligent failure of an attorney representing a deportable alien -- a woman who has lived in the United States for twenty-five years and has a husband and two children who are American citizens -- to file with the immigration judge in timely fashion an application for discretionary relief that, if found meritorious, would have saved his client from deportation.  Because of the attorney's lapse, the immigration judge (1) ruled that the intended application for discretionary relief had been abandoned, and (2) ordered the alien deported.  On appeal to the Board of Immigration Appeals (Board), the alien's attorney sought to persuade the Board that his client should not suffer disadvantage because of his negligence; but the Board upheld the decision of the immigration judge.  On petition for review of the decision of the Board the attorney for the alien repeats and elaborates his plea of mea culpa.  The attorney contends that the crucial ruling of the immigration judge which the Board sustained -- the ruling that the attorney's failure to file the intended application for discretionary relief in timely fashion constituted an abandonment

of the application -- worked a denial of due process to his client, since the immigration judge had not warned the attorney of the potential adverse consequences of a failure to file on time. The attorney also challenges the ruling of the immigration judge, sustained by the Board, as an abuse of discretion. We find no error in the decision of the Board and we therefore deny the petition for review.

## I.

In January of 1993 respondent Immigration and Naturalization Service (INS) served on petitioner Bibi Fazallah Green -- a citizen of Guyana who came to the United States as a student in 1969 and became a permanent resident in 1983 -- an order to show cause why she should not be deported. According to the INS order to show cause, Green had twice been convicted of possession of a controlled substance: both convictions were in a Pennsylvania state court, the first was in 1990, the second in 1992. The INS alleged that these convictions made Ms. Green subject to deportation under two distinct provisions of the Immigration and Nationality Act of 1952 ("the Act"). Section 241(a)(2)(B)(i) of the Act provides that, "upon the order of the Attorney General," "[a]ny alien who at any time after entry has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams

or less of marijuana . . . is deportable."[1]  And section 241(a)(2)(A)(iii) of the Act provides that, "upon the order of the Attorney General," "[a]ny alien who is convicted of an aggravated felony at any time after entry is deportable."[2]

---

[1].  Section 241(a)(2)(B)(i), codified at 8 U.S.C. § 1251(a)(2)(B)(i), provides in full as follows:

> (a) **Classes of deportable aliens**
>
> Any alien (including an alien crewman) in the United States shall, upon the order of the Attorney General, be deported if the alien is within one or more of the following classes of deportable aliens:
>
>       * * * * * *
>
> (2) **Criminal offenses**
>       * * * * * *
>
>   (B) **Controlled substances**
>
>    (i) **Conviction**
>
>     Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

[2].  Section 241(a)(2)(A)(iii), codified at 8 U.S.C. § 1251(a)(2)(A)(iii), includes among the category of "criminal offenses" rendering an alien deportable:

> **Aggravated felony**
>
>    Any alien who is convicted of an aggravated felony at any time after entry is deportable.

Ms. Green retained Robert S. Whitehill, a Pittsburgh attorney, to represent her before the INS.  In a telephone status conference conducted by Immigration Judge Fujimoto on August 18, 1993, Mr. Whitehill disputed Ms. Green's deportability under the aggravated felony provision (section 241(a)(2)(A)(iii)) but conceded deportability under the possession-of-a-controlled-substance provision (section 241(a)(2)(B)(i)).  At the same time, Mr. Whitehill advised Judge Fujimoto and INS District Counsel Richard Sharkey that Ms. Green would seek to avoid deportation by applying for a waiver of inadmissibility pursuant to section

(..continued)
    Section 101(a)(43), codified at 8 U.S.C. § 1101(a)(43), provides:

> The term, "aggravated felony" means murder, any illicit trafficking in any controlled substance (as defined in section 802 of Title 21), including any drug trafficking crime as defined in section 924(c)(2) of Title 18, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, any offense described in section 1956 of Title 18 (relating to laundering of monetary instruments), or any crime of violence (as defined in section 16 of Title 18, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years, or any attempt or conspiracy to commit any such act. Such term applies to offenses described in the previous sentence whether in violation of Federal or State law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years.

212(c) of the Act.[3]  The INS, for its part, reasserted the

contention that Ms. Green was subject to deportation under the

_____

[3].  Section 212(c), codified at 8 U.S.C. § 1182(c), provides:

> Aliens lawfully admitted for permanent
> residence who temporarily proceeded abroad
> voluntarily and not under an order of
> deportation, and who are returning to a
> lawful unrelinquished domicile of seven
> consecutive years, may be admitted in the
> discretion of the Attorney General without
> regard to the provisions of subsection (a)
> (other than paragraphs (d) and (9)(C)).
> Nothing contained in this subsection shall
> limit the authority of the Attorney General
> to exercise the discretion vested in him
> under section 211(b).  The first sentence of
> this subsection shall not apply to an alien
> who has been convicted of one or more
> aggravated felonies and has served for such
> felony or felonies a term of imprisonment of
> at least 5 years.

In Lozada v. I.N.S., 857 F.2d 10 (1st Cir. 1988), the
petitioner was, like Ms. Green, a permanent resident alien whom
the INS viewed as deportable and who hoped to avoid deportation
via a section 212(c) application.  The First Circuit explained,
in a footnote, id. at 11 n.1, the pertinence of what would appear
to be quite inapposite statutory language:

> Petitioner would seem ineligible for relief
> under the language of section 212(c), which
> applies on its face only to resident aliens
> who have travelled abroad temporarily and are
> excludable upon return to the United States.
> However, in Francis v. INS, 532 F.2d 268 (2d
> Cir. 1976), the court ruled that Congress
> could not constitutionally confine this
> possible relief to aliens who leave the
> country.  After Francis, the Board of
> Immigration Appeals held that section 212(c)
> relief also is available in deportation
> proceedings.  Matter of Silva, 16 I & N Dec.
> 26, 30 (BIA 1976).

aggravated felony provision as well as the possession-of-a-controlled-substance provision.

At the close of the conference, Judge Fujimoto set deadlines for future proceedings. With respect to the aggravated felony issue, Judge Fujimoto postponed findings pending submission by Mr. Sharkey of documents establishing with precision the state charges pursuant to which Ms. Green was convicted; an October 1, 1993 deadline was set for the filing of these materials. Judge Fujimoto then addressed Mr. Whitehill (A.R. 107-08):

> JUDGE TO MR. WHITEHILL
>
> > Q. You've already conceded deportability on the one charge, Mr. Whitehill, so as relief you're going to be requesting 212(c) waiver. Correct?
> >
> > A. Sure are.
> >
> > Q. All right. October 1st is the call-up date for that as well. And, then we'll hold a hearing, assuming the application has been filed, on November 4th, 1993, 9:00 a.m., in Pittsburgh. And, we'll send you a written notice of that hearing date.
>
> JUDGE TO BOTH COUNSEL
>
> > Q. Is that acceptable, then, to both sides?
>
> JUDGE TO MR. SHARKEY
>
> > Q. [sic] Yes, sir.
>
> JUDGE TO MR. WHITEHILL
>
> > A. To the alien, it is acceptable.

Q.  All right.  Let me again run through it very briefly.  I've -- you've conceded deportability on the controlled substance.  Prior to rendering a finding on the aggravated felony charge, I'm asking the Service to submit the indictment and the state statute under which the respondent was convicted.  Mr. Whitehill, you'll be submitting your 212(c) application on or before October 1st.  If you wanted to make an argument with regards to why she is not deportable as an aggravated felon, please also have that argument tendered on or before that date.  We'll then go forward with individual calendar hearing November 4th, 9:00 a.m.  We'll allocate the entire morning, no interpreter required.

As of October 1, 1993, the date specified by Judge Fujimoto on August 18, Mr. Whitehill had filed neither a § 212(c) "call-up" application nor a motion to extend the time to file.  Twenty-seven days later there had still been no filing by Mr. Whitehill.  On that day -- October 28, 1993 -- Judge Fujimoto filed the following decision (A.R. 89-90):

DECISION OF THE IMMIGRATION JUDGE

The respondent is a female native and citizen of Guyana [*] who was admitted to the United States on August 22, 1969 as a nonimmigrant student.  On February 24, 1983, her status was adjusted to that of a lawful permanent resident.  Deportation proceedings were commenced against her through the issuance of an Order to Show Cause, charging her with deportability under the above-captioned sections of the Immigration & Nationality Act.

At her hearing, the respondent, through counsel, admitted allegations 1 and 3 through 7 contained in the Order to Show Cause and conceded deportability under Section 241(a)(2)(B)(i), relating to having been

convicted of a controlled substance violation. [**]

The respondent requested leave to file an application for a waiver of inadmissibility under Section 212(c) of the Act and was given a call-up date of October 1, 1993, for the filing of the application.

To date, no application has been filed, nor has any request for an extension of time been received. It is well settled that applications for benefits under the Immigration & Nationality Act may be properly denied as abandoned where the alien fails to timely file them. See Matter of Jean, 17 I & N Dec. 100 (BIA 1979); Matter of Jaliawala, 14 I & N Dec. 664 (BIA 1974); Matter of Pearson, 13 I & N Dec. 152 (BIA 1969); Matter of Nafi, 19 I & N Dec. 430 (BIA 1987).

Accordingly, the following orders will be entered:

ORDER: The respondent's request to apply for a waiver of inadmissibility under Section 212(c) of the Act is DENIED for lack of prosecution.

IT IS FURTHER ORDERED that the respondent be deported from the United States to Guyana under Section 241(a)(2)(B)(i) of the Act.


DATE: October 28, 1993 James R. Fujimoto
                              Immigration Judge

_____

[*] The respondent asserted that she is a native and citizen of "British Guiana (British Guyana)". I take note of the fact that "Guyana" and "British Guiana (British Guyana)" refer to the same country [see Webster's II New Riverside Dictionary] and therefore find that allegation 2 has been sustained.

[**] In view of respondent's concession of deportability under Section 241(a)(2)(B)(i) and

pretermission of her application, I do not reach the issue of her deportability under Section 241(a)(2)(A)(iii).

The next day -- October 29, 1993 -- Mr. Whitehill sent

Judge Fujimoto a motion to reopen. The motion stated, in

pertinent part (A.R. 53-54):

8. On August 18, 1993, the Court ordered counsel to file for 212(c) relief on or before October 1, 1993.

9. Solely through inadvertence of counsel, the request for relief was not timely filed.

10. On October 28, 1993, at approximately 10:00 a.m. the Office of the Court advised undersigned counsel telephonically that an Order was being issued by the Court, Fujimoto, J., to deport the alien, without a hearing, preserving rights of appeal, for failure to prosecute the relief sought under 212(c).

11. Counsel has prepared this motion and the attached I-191 which was not able to be receipted on October 28, 1993, but will be filed October 29, 1993. The fee receipt will be forwarded to the Court.

12. It is respectfully submitted that the Court's order, if properly understood by undersigned counsel, denies the alien's right to due process of law.

13. An order of deportation without right of trial creates a human tragedy which may be able to be avoided.

14. By virtue of the Court's order and without a hearing to assert her grounds for relief, the alien, her children and her husband, all U.S. citizens, may be forced to suffer the consequences of the alien's

deportation based solely on counsel's failure to timely file the formal pleading, an I-191.

The motion to reopen was not formally acted on.  On November 4, 1993, Mr. Whitehill sent Judge Fujimoto a notice of appeal to the Board with a copy to INS District Counsel Sharkey.

On March 24, 1994, the Board issued an opinion affirming Judge Fujimoto's decision.  The central holding of the Board was as follows (A.R. 3-4):

> On appeal, the respondent contends that the late filing of her application was due to the inadvertence of her counsel.  She asserts that the immigration judge's deportation order is an error of law in that it deprived her of her due process rights to have her application for relief considered and an abuse of discretion since the late filing is excusable.
>
> * * * * * *
>
> [A]n alien seeking reopening of deportation proceedings in order to file an application for relief from deportation must show reasonable cause for her failure to timely file the application.  See 8 C.F.R. § 3.29 (if an application is not filed within the time set by the immigration judge, the opportunity to file that application shall be deemed waived); Matter of R-R-, Interim Decision 3182 (BIA 1992).
>
> The respondent has not shown reasonable cause for failing to timely file an application.  See Matter of R-R-, supra. Generally, litigants are bound by the conduct of their representatives.  See Garcia v. INS, ___ F.3d ___ (No. 91-2113) (1st Cir. October 22, 1993); Magallanes-Damian v. INS, 783 F.2d 931 (9th Cir. 1986); Matter of Velasquez, 19 I&N Dec. 377 (BIA 1986).  Deadlines set for the filing of applications for relief often are breached by attorneys and would be

meaningless if counsel's mistakes in this regard were excused every time such action allegedly prejudiced a client. Garcia v. INS, supra.

We therefore conclude that because the respondent has failed to show reasonable cause for failing to timely file the Form I-191 application, the case will not be remanded to the immigration judge.

ORDER: The decision of the immigration judge is affirmed.

## II.

The petition for review focuses on the Board's reliance on 8 C.F.R. § 3.29 (hereinafter "§ 3.29"), an INS procedural regulation which provides as follows:

> The Immigration Judge may set and extend time limits for the filing of applications and related documents and responses thereto, if any. If an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived.[4]

The petition for review does not quarrel with the propriety of vesting in immigration judges, by administrative regulation, the authority to "set . . . time limits for the filing of applications." Rather, the petition for review takes exception to the fact that Judge Fujimoto did not expressly advise Mr. Whitehill that failure to file a § 212(c) application

---

[4]. As of 1993, § 3.29 had been renumbered as § 3.31(c), 8 C.F.R. § 3.31(c). But since the Board, in its opinion, referred to the regulation as § 3.29, we will follow that usage in this opinion.

on Ms. Green's behalf in conformity with the timetable announced by the Judge could result in a judicial determination, pursuant to § 3.29, that "the opportunity to file that application . . . shall be deemed waived."  Mr. Whitehill's brief on behalf of petitioner Green argues that Judge Fujimoto was obligated to "make clear the possible draconian consequences of failure to timely file."  Brief of Appellant [sic] at 13.  Because Judge Fujimoto gave no warning of the "possible draconian consequences," it is contended that Judge Fujimoto's ruling -- that Ms. Green's expected § 212(c) application had been abandoned and that, in consequence, Ms. Green was to be deported -- constituted a denial of due process, or, in the alternative, an abuse of discretion.  We now address these contentions.

(A)  Due Process

In part I of this opinion, which presents the procedural history of this case, we have set forth the closing portion of Judge Fujimoto's August 18, 1993, telephone conference with Messrs. Sharkey and Whitehill.  For the purposes of this case, the crucial colloquy was the following:

> Q.  You've already conceded deportability on the one charge, Mr. Whitehill, so as relief you're going to be requesting 212(c) waiver.  Correct?
>
> A.  Sure are.
>
> Q.  All right.  October 1st is the call-up date for that as well.  And, then we'll hold a hearing, assuming the application has been filed, on November 4th, 1993, 9:00 a.m., in Pittsburgh.  And, we'll send you a written notice of that hearing date.

JUDGE TO BOTH COUNSEL

     Q.  Is that acceptable, then, to both sides?

JUDGE TO MR. SHARKEY

     Q. [sic]  Yes, sir.

JUDGE TO MR. WHITEHILL

     A.  To the alien, it is acceptable.

At whatever time Mr. Whitehill first became acquainted with § 3.29, the INS regulation whose application he now challenges, he would have learned not only that Judge Fujimoto had formal authority to set an October 1, 1993, filing date for the § 212(c) application but also that failure to file on time would carry with it the probable consequence that "the opportunity to file that application . . . shall be deemed waived."

The record before this court is silent on when Mr. Whitehill first learned about § 3.29 -- on or prior to August 18, 1993, when Judge Fujimoto set the schedule; or, perhaps, not before October 1, 1993, the date the § 212(c) application was to be filed; or, quite possibly, not before October 28, 1993, the day Judge Fujimoto filed his opinion; or, equally possibly, not before March 24, 1994, when the Board, in affirming Judge Fujimoto's decision, filed an opinion expressly relying on the challenged regulation.  We will assume, arguendo, that Mr. Whitehill was unaware of § 3.29 until after Judge Fujimoto's decision.

The burden of Mr. Whitehill's argument is that Judge Fujimoto was constitutionally foreclosed from applying § 3.29's waiver principle because he had not given Mr. Whitehill express warning that a failure to file on time could be the catalyst for a finding that the proposed § 212(c) application -- which on this record appears to have been the only potential mode of relief from deportation for a client whose deportability Mr. Whitehill had conceded on the record -- had been abandoned.[5]

We know of no authority for the notion that, as a general matter, the due process clause imposes on courts an obligation to advise lawyers personally of the potential adverse consequences of not complying with procedural rules. To the contrary, we think that, as a general proposition, the American legal system presumes that lawyers who handle litigation have the responsibility of familiarizing themselves with procedural rules and the ways in which those rules are applied. And we see no

---

[5]. The INS contends, <u>inter alia</u>, that in fact Judge Fujimoto "did explicitly put petitioner and her counsel on notice that the filing of her application for relief was a prerequisite to a further hearing in her case." Brief for Respondent at 9-10. Presumably the INS has in mind Judge Fujimoto's recital at the August 18, 1993, telephone status conference that "October 1st is the call-up date for that [the § 212(c) application] as well. And, then we'll hold a hearing, assuming the application has been filed, on November 4th, 1993, 9:00 a.m., in Pittsburgh." A.R. 107. The contention is not without some weight. However, given our disposition of the case, we find it unnecessary to determine whether the Judge's recital adequately conveyed the thought that the filing of a § 212(c) application <u>on time</u> was a necessary predicate for a hearing at which Mr. Whitehill could present the case for avoidance of deportation.

reason to suppose that this general proposition is without application to the particular sorts of procedural rules -- those that govern the timing of various phases of litigation -- at issue in this case.  We note that some of the rules that govern timing incorporate recitals, akin to that in § 3.29, as to the consequences of non-compliance, but that others do not.  An example of the former sort of rule is Rule 13 of the Rules of the Supreme Court:  Rule 13 provides that a petition for certiorari to review a judgment of a court of appeals, or of "a state court of last resort," or of the Court of Military Appeals, must be filed within ninety days of the entry of the judgment, and that one of the Justices may extend the time for no more than sixty days; and the rule further provides: "The Clerk will refuse to receive any petition for a writ of certiorari which is jurisdictionally out of time."  An example of the latter sort of rule is Rule 13(a) of the Federal Rules of Appellate Procedure: Rule 13(a), which governs appeals from the Tax Court, provides that "[r]eview . . . shall be obtained by filing a notice of appeal with the clerk of the Tax Court within 90 days after the decision of the Tax Court is entered," but the rule is silent as to the consequences of failing to file on time.  No case that has come to our attention gives ground for the inference that either of the quoted rules is, from the perspective of the Fifth Amendment, unenforceable in the absence of an express admonition

by a clerk of court, or by a judge or by one of the Justices, that the rule means what it says.

It is contended, however, that § 3.29 is a special case. Mr. Whitehill's brief points to a paragraph in a manual of guidance for immigration judges referred to as the "Immigration Judge's Benchbook" (Benchbook) -- a paragraph pursuant to which, so it is urged, Judge Fujimoto should have given Mr. Whitehill an express "admonishment" with respect to the consequences of a failure to conform to the filing date the Judge had announced.

The paragraph in question is as follows:

> Impress the importance of filing briefs and relief applications on a timely basis. Those who fail to do so can be quickly cured of the practice if you summon them to court for an interim hearing, take pleadings and set up a filing schedule with an admonishment. Such admonishment should state that if the application is not timely filed, you presume that it will not be forthcoming and you will enter a written decision cancelling the IC trial date and ordering deportation or voluntary departure, as appropriate.[6]

The INS contends that, since the Benchbook's first appearance in this case was in Mr. Whitehill's brief in this court, the Benchbook is not properly before us.[7] The INS also contends that -- assuming the Benchbook can be considered by us

---

[6]. Benchbook (pre-1989 version), § III, ¶ B.2.f.(8). Attachment B at III-17, to letter of Oct. 25, 1994, from Jane Gomez, Esq., Attorney, Office of Immigration Litigation, Civil Division, Department of Justice, to Ms. Pamela Lester, Deputy Clerk of this court.

[7]. The INS argues that we should not consider the Benchbook for two, related, reasons: first, the Benchbook was not made part of

-- Mr. Whitehill's reliance on the "admonishment" language is misplaced, for the reason that, although the language appeared in an early version of the Benchbook, it had been dropped from the version of the Benchbook which would have been consulted by immigration judges during the summer and fall of 1993 when Ms. Green's case was before Judge Fujimoto.[8]  We find it unnecessary to determine whether the Benchbook, in any of its versions, can properly be relied on here, because, even if the "admonishment" language was included in a version of the Benchbook which Judge Fujimoto might have had occasion to refer to in 1993, Mr. Whitehill's reliance on that language is unavailing.  The preface to the Benchbook -- a preface bearing the signature of Chief Immigration Judge William R. Robie -- recites that "[t]he procedures outlined herein (that are not contained within specific Operating Policies and Procedures memoranda) are not binding on the Immigration Judges, and are set forth solely as

(..continued)
the administrative record, and, second, the Benchbook was not relied upon by Mr. Whitehill before the Board.

[8].  After Mr. Whitehill cited the Benchbook paragraph in his brief in this court, we requested counsel to submit pertinent portions of the Benchbook.  The INS submission shows the quoted paragraph to have been paragraph B.2.f. of a version of section III of the "Benchbook" that antedated 1989; the counterpart paragraph in the revised section III -- paragraph C.2.b.(6)(g) -- does not include the "admonishment" language.  The INS represents that the revised version was the one which was current in the summer and fall of 1993.  There was no further submission from Mr. Whitehill.

practical suggestions for their consideration."[9]  Thus, even if

the "admonishment" paragraph was part of the Benchbook guidance

that Judge Fujimoto might have consulted in 1993, that guidance

was not binding on Judge Fujimoto.  In short, the Benchbook had

no regulatory weight.  A fortiori it had no constitutional

weight.

In sum, we find that the arguments advanced by Mr.

Whitehill fail to demonstrate that Ms. Green has been denied due

process of law.


(B)  Abuse of Discretion

For the reasons stated we have rejected the contention

that the action of the Board, affirming the decision of Judge

Fujimoto, constituted a denial to Ms. Green of due process of

law.  It is contended, in the alternative, that the action of the

Board constituted an abuse of discretion.

---

[9].  8 C.F.R. § 3.9 sets forth the principal duties of the Chief
Immigration Judge:

> The Chief Immigration Judge shall be
> responsible for the general supervision,
> direction and scheduling of the Immigration
> Judges in the conduct of the various programs
> assigned to them.  This shall include:
>
>     (a)  Establishment of operational
> policies;
>
>     (b)  Evaluation of the performance of
> Immigration Judge offices, making appropriate
> reports and inspections and taking corrective
> action where indicated.

The abuse-of-discretion claim covers the same ground as the due process claim, and we find it no more persuasive. Judge Fujimoto did not act unreasonably in ruling, on October 28, 1993, that Mr. Whitehill's failure (a) to file a § 212(c) application due twenty-seven days before, or (b) to request an extension of time to file, worked an abandonment of the application. Nor did the Board act unreasonably when, in reliance on § 3.29 and its own settled jurisprudence, it affirmed Judge Fujimoto's ruling.

III.

In his submissions to the Board, and subsequently to this court, Mr. Whitehill has not contended that his representation of Ms. Green before Judge Fujimoto was so inadequate as to constitute ineffective assistance of counsel. Cf. Lozada v. I.N.S., 857 F.2d 10, 13-14 (1st Cir. 1988). Thus, that potential due process claim was not before the Board and is not before us. It appears, however, that it is still open to Ms. Green to raise such a claim before the Board. On oral argument here, in response to questions from the court, counsel for the INS said the following:

> . . . Your Honor, she [Ms. Green] does have that right and there are administrative means to address that right. . . .
>
> * * * * * *
>
> . . . [W]hat the petitioner would need to do is file a motion to reopen with the Board asserting ineffective assistance. She would also need to write down the agreement that was made with counsel and if any legal action

had been taken such as reporting to a bar association.

If, after the issuance of our mandate denying the petition for review, Ms. Green does file with the Board a motion to reopen on ineffective-assistance-of-counsel grounds, and if that motion is denied, we may then be called upon, on a subsequent petition for review, to determine whether the shortcomings of Ms. Green's counsel in handling the proceedings before Judge Fujimoto constituted a deprivation of due process.

## Conclusion

Finding no error in the decision of the Board of Immigration Appeals, we deny the petition for review.