**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1063
_____

ASTRIT ZHULEKU,
                              Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A076-093-837)
Immigration Judge:  Honorable Frederick G. Leeds

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 12, 2012
Before:  FISHER, WEIS and BARRY, <u>Circuit Judges</u>

(Opinion filed: September 21, 2012)
_____

OPINION
_____

PER CURIAM.

Petitioner Astrit Zhuleku, a citizen of Albania, entered the United States in

September 1998.  The following month, he applied for asylum, withholding of removal,

and relief under the Convention Against Torture ("CAT").  He claimed that, prior to the

fall of communism in Albania in the early 1990s, he had been detained in an internment camp for anti-communist political prisoners for twenty-five years. He also claimed that, more recently, he had been persecuted because of his affiliation with Albania's Democratic Party.

In December 1998, Zhuleku was placed in removal proceedings for having entered the country on an invalid entry document, and conceded his removability. In support of his asylum application, he submitted, inter alia, a document reflecting his membership in the National Association of the Ex Political Anti-Communist Prisoners, as well as a certificate indicating that he himself was an ex-political prisoner. The Government sent these two documents to the United States Embassy in Albania to assess their authenticity. On February 11, 2000, a consular investigator issued a report concluding that the membership document was authentic and that the certificate was a forgery. On March 28, 2000, the Government notified the presiding Immigration Judge ("IJ"), the Honorable Nicole Kim, that it might seek to move the report into evidence at the merits hearing, which was scheduled for May 24, 2000. It appears that Zhuleku's attorney at that time, Claude "Lou" Maratea,[1] received a copy of the Government's notification.

When the May 24, 2000 hearing commenced, Maratea informed IJ Kim that Zhuleku wished to withdraw his asylum application and request voluntary departure. IJ Kim then had the following exchange with Zhuleku:

---

[1]    Zhuleku was originally represented by attorney Adrienne Packer. Maratea replaced Packer as counsel in April 1999.

2

IJ:     Sir, my understanding from your lawyer is that you do not wish to pursue the applications of political asylum, withholding of removal as to Albania, nor the reliefs pursuant to the U.N. Convention against Torture. Is that correct, sir?

Zhuleku:     Yes. It's true.

IJ:     And you fully discussed the ramifications, the consequences of your decision, sir, with your lawyer? Sir, listen to me. All I need to know is that you fully discussed the situation, the consequences of your actions today with your lawyer. Did you do that, sir?

Zhuleku:     I was aware of the situation today.

IJ:     Sir, you're not answering my question. My question to you is -- you have asked that I do something. All right. The thing that you have asked, through your lawyer, is that I do not consider any other applications, other than voluntary departure. What I need to know is that in coming to this decision, you have discussed it fully with your lawyer. That is my question, sir.

Zhuleku:     Yes.

IJ:     And did you fully discuss your circumstances and your actions in withdrawing your application before this Court with your lawyer? That's my question.

Zhuleku:     Yes.

IJ:     And are you knowingly and willingly withdrawing those applications before this Court?

Zhuleku:    This situation that I just become aware of -- it's my willing to do this.

IJ:    Sir, we had this problem last time, where you're not listening to my question and answering me directly. I need to be satisfied that I fully understand your actions. So, please listen to my question again. Are you knowingly and willingly voluntarily doing this of your own free will? That's my question, sir.

Zhuleku:    Yes.

IJ:    And I further understand that the only application you're seeking before me is that of voluntary departure. Is that also correct, sir?

Zhuleku:    Yes.

(A.R. at 596-97.)

After this exchange, the Government stated that it would stipulate to a grant of voluntary departure. IJ Kim then entered the consular report, among other evidence, into the record, and granted Zhuleku voluntary departure. Neither party filed an appeal.

In November 2008, more than eight years after IJ Kim's decision, Zhuleku, represented by new counsel, filed a motion to reopen sua sponte. The motion alleged that: (1) Zhuleku's asylum application, which had been prepared by a non-attorney, was "in artfully [sic] drafted," and much of it was "incomprehensible and did not coherently explain why [he] left Albania"; (2) his former attorneys had failed to clarify or supplement his application; (3) during the May 24, 2000 hearing, he was "confused as to why he would not be litigating his case and disagreed with his attorney's decision to

4

withdraw [his asylum application]"; (4) it was unclear whether former counsel had "requested a continuance or an opportunity to rebut the consular report"; and (5) IJ Kim had denied him due process by failing to afford him an opportunity to either respond to the consular report or present his case notwithstanding that report. (Id. at 162-64.)

In December 2008, a different IJ — the Honorable Frederic Leeds — denied the motion. In that decision, IJ Leeds determined that Zhuleku had "failed to meet the requirements for a motion to reopen based upon ineffective assistance of counsel." (Id. at 156.) Specifically, IJ Leeds found that Zhuleku had not complied with In re Lozada, 19 I. & N. Dec. 637 (BIA 1988), that his allegations of ineffectiveness were time-barred, and that he had not been diligent in pursuing his claims. IJ Leeds also addressed the merits of Zhuleku's ineffectiveness claims, finding that "the record indicate[d] that [Zhuleku] had time to obtain supporting documentation and that [IJ Kim] questioned [him] regarding his decision to accept voluntary departure." (Id.)

IJ Leeds also found that Zhuleku had not submitted any new, material evidence. Additionally, IJ Leeds concluded that, although Zhuleku

> claims that the Government confronted [him] with a forensic report that indicated one of his documents was false, the record does not indicate that this occurred, nor does it affect the outcome of the proceedings. [Zhuleku] chose to withdraw his applications, which includes waiving the right to contest the evidence and litigate his claims. [He] indicated that he fully understood that he was withdrawing his applications and accepting voluntary departure.

(Id. at 157.) In light of the above-noted considerations, the IJ concluded that Zhuleku

5

failed to demonstrate "exceptional circumstances" warranting sua sponte reopening.

Zhuleku appealed IJ Leeds's decision to the Board of Immigration Appeals ("BIA"). In November 2010, the BIA dismissed the appeal. Thereafter, Zhuleku timely petitioned this Court to review the BIA's decision, and moved for a stay of removal. (C.A. 10-4418.) On May 3, 2011, this Court denied the stay motion. A few days later, the Government filed an unopposed motion to remand to the BIA, averring that the transcript of the proceedings before IJ Kim had not been part of the record before the BIA. On May 20, 2011, this Court granted the Government's motion.

On remand, the BIA added the transcript to the record and, in December 2011, issued a new decision affirming the IJ. In that decision, the BIA began by finding that Zhuleku's motion to reopen was untimely, and that he had failed to comply with Lozada. Next, the BIA addressed Zhuleku's contention that both it and IJ Leeds had made incorrect findings of fact. The BIA noted that it had stated, in its November 2010 decision, that IJ Leeds found that Zhuleku was given a continuance to rebut the State Department investigation. In fact, the BIA acknowledged, IJ Leeds had found that Zhuleku had been given a continuance to provide evidence of his internment in a camp. The BIA concluded that this summary of fact error was "without any substantive effect." (A.R. at 4 (citations omitted).)

Next, the BIA rejected Zhuleku's claim that IJ Kim had violated his due process rights. Zhuleku, while represented by counsel, had not moved for a continuance. IJ Kim questioned Zhuleku about whether his decision to instead withdraw his application was

6

voluntary, and Zhuleku responded affirmatively. The BIA rejected Zhuleku's claim that his counsel was ineffective.

The BIA also concluded that Zhuleku had failed to exercise due diligence in pursuing his claims. Although the BIA noted that Zhuleku had submitted a letter from his doctor detailing heart problems from 2005, the BIA found that Zhuleku's "ill health does not explain his failure to take any action for such a long period of time." (Id. at 5.) The BIA then declined to reopen sua sponte. Zhuleku filed a timely petition for review of this most recent BIA decision, and moved for a stay of removal. We denied the stay motion, and we will now deny the petition for review.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a) to review the denial of Zhuleku's motion to reopen as untimely. We review the BIA's decision to affirm for abuse of discretion. Liu v. Att'y Gen., 555 F.3d 145, 148 (3d Cir. 2009). Under this standard, we may reverse the BIA's decision only if it is "arbitrary, irrational, or contrary to law." Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). Our jurisdiction, however, does not generally extend to that aspect of the order in which the BIA declined to reopen sua sponte. See Cruz v. Att'y Gen., 452 F.3d 240, 249 (3d Cir. 2006); Calle-Vujiles v. Ashcroft, 320 F.3d 472, 474-75 (3d Cir. 2003). In such a case, we may exercise jurisdiction only "to the limited extent of recognizing when the BIA has relied on an incorrect legal premise." Pllumi v. Att'y Gen., 642 F.3d 155, 160 (3d Cir. 2011).

7

In general, motions to reopen must be filed within ninety days from the date "of entry of a final administrative order of removal." 8 C.F.R. § 1003.23(b)(1); see also 8 U.S.C. § 1229a(c)(7)(C). The time limit for filing a motion to reopen is subject to equitable tolling. See Borges v. Gonzales, 402 F.3d 398, 406 (3d Cir. 2005). Ineffective assistance of counsel can provide a basis for equitable tolling of the time to file a motion to reopen. See Mahmood v. Gonzales, 427 F.3d 248, 251-52 (3d Cir. 2005). If ineffectiveness is substantiated, a petitioner must also demonstrate that he diligently pursued his claims. Id. at 252.

### III.

Zhuleku's motion to reopen was clearly untimely, a fact that Zhuleku admits. Instead, Zhuleku challenges the BIA's decision affirming the IJ's determination that he was not entitled to equitable tolling of the time limit to file a motion to reopen based on his claim of ineffective assistance of counsel. In Lozada, the BIA laid out a three-step procedure for establishing an ineffective assistance of counsel claim justifying reopening. This Court has held that the Lozada requirements are a reasonable exercise of discretion. Lu v. Ashcroft, 259 F.3d 127, 132 (3d Cir. 2001). We see no error in the IJ's or BIA's determination that Zhuleku failed to comply with any of the procedural requirements set forth in Lozada.

Additionally, it is clear that Zhuleku failed to pursue his claim with diligence. Although Zhuleku claims that his poor health has prevented him from complying with Lozada, he also states that his health problems began in 2005, years after IJ Kim issued

8

her decision. Further, as the Government points out, his poor health has not prevented him from litigating his motion to reopen, remanded appeal, or this petition for review. Thus, the BIA did not abuse its discretion in declining to equitably toll the time to file his motion to reopen.

Because Zhuleku failed to show that he was entitled to equitable tolling of the time limit to file a motion to reopen, we need not reach his due process claims. Even if we were to reach them, the claims lack merit. He first claims that the BIA erred in relying on erroneous findings of fact to deny his motion, in violation of his due process rights. "[D]ue process challenges to deportation proceedings require an initial showing of substantial prejudice." Khan v. Att'y Gen., 448 F.3d 226, 236 (3d Cir. 2006) (citations omitted). The BIA conceded that it had erred in summarizing IJ Leeds' decision, but concluded that the error was harmless. Zhuleku fails now to show how the error actually affected his case.

Zhuleku also claims that IJ Kim should have granted him a continuance to gather rebuttal evidence to the consular report, and that his withdrawal of his application for relief was involuntary. First, we note that these challenges should have been raised in an appeal from IJ Kim's decision. Second, as the BIA found, the transcript reveals that Zhuleku never requested a continuance or other opportunity to rebut the consular report's findings. Due process does not require courts to advise attorneys on their tactical decisions. See, e.g., Green v. INS, 46 F.3d 313, 318 (3d Cir. 1995). Lastly, the transcript reveals that Zhuleku responded affirmatively, and repeatedly, to IJ Kim's questioning on

9

the voluntariness of his decision to withdraw his applications for relief. Accordingly, the BIA did not abuse its discretion in rejecting Zhuleku's due process claims.

Finally, to the extent Zhuleku challenges the BIA's denial of his request for sua sponte reopening, we lack jurisdiction over the claim. See Cruz, 452 F.3d at 249; Calle-Vujiles, 320 F.3d at 474-75. There is no indication that the BIA relied on an incorrect legal premise that would allow us to exercise jurisdiction. See Pllumi, 642 F.3d at 160.

III.

For the foregoing reasons, we will deny the petition for review.