

**2006 Decisions**

Opinions of the United
States Court of Appeals
for the Third Circuit

12-20-2006

# Hatta v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4662

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Hatta v. Atty Gen USA" (2006). *2006 Decisions*. Paper 62.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/62

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4662
_____

CHANDRA HATTA,
Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
Respondent
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(Agency No. A96 427 154)
_____

Submitted Under Third Circuit LAR 34.1(a)
November 28, 2006

Before: RENDELL and AMBRO, <u>Circuit Judges</u>
PRATTER,* <u>District Judge</u>

(Filed:    December 20, 2006)

_____

    *Honorable Gene E.K. Pratter, United States District Judge for the Eastern District
of Pennsylvania, sitting by designation.

OPINION OF THE COURT

PRATTER, <u>District Judge</u>

Chandra Hatta is a native and citizen of Indonesia, a person of Chinese ethnicity, and a Buddhist. Mr. Hatta seeks review of the denial by the Board of Immigration Appeals of his motion to reopen his proceedings relating to his applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture.[1] The Board had earlier adopted and affirmed an Immigration Judge's decision to deny Mr. Hatta's application for asylum and withholding of removal. Mr. Hatta sought to reopen the Board's denial of his claims on the grounds that the conditions and circumstances in Indonesia have worsened such that he would not be safe there if he were to return.

The Board had jurisdiction over Petitioner's motion to reopen his proceedings under 8 C.F.R. § 1003.2(c). The Court has jurisdiction to review the Board's final order of removal pursuant to Section 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1). The Court reviews the Board's denial of a motion to reopen a final order of

---

[1] The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231).

removal for an abuse of discretion, "mindful of the 'broad' deference that the Supreme Court would have us afford." *Lu v. Ashcroft*, 259 F.3d 127, 131 (3d Cir. 2001) (*citing INS v. Abudu*, 485 U.S. 94, 110, 108 S. Ct. 904, 915 (1988); *INS v. Doherty*, 502 U.S. 314, 323, 112 S. Ct. 719, 724-25 (1992); *Shardar v. Ashcroft*, 382 F.3d 318, 324-325 (3d Cir. 2004). In view of this standard, the Court will reverse the Board's decision only if it is arbitrary, irrational or contrary to law. *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004).

The Board is obliged by 8 C.F.R. § 1003.2(c)(1) not to grant a motion to reopen in immigration proceedings "unless it appears . . . that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."[2] 8 C.F.R. § 1003.2(c)(1). Thus, the Court is presented with the limited

---

[2] Normally, a motion to reopen must be filed "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). However, one exception is that this 90 day requirement does not apply to a motion to "apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(iii). Regardless of whether an applicant files a timely motion to reopen or an untimely motion to reopen filed because of "changed circumstances," the substantive standard of what the applicant must prove is the same.

This construct of permitting an applicant to file an untimely motion because of changed circumstances is also found in the regulations that govern the filing of an initial application for asylum, which provide that an application must be filed within one year of the applicant's arrival in the United States, unless the applicant can show "changed circumstances which materially affect the applicant's eligibility for asylum." See 8 U.S.C. § 1158(a)(2)(B) (requiring that, subject to a changed conditions exception, the asylum provisions "shall not apply to an alien unless the alien demonstrates by clear and

3

question of whether the Board abused its discretion in not reopening Mr. Hatta's proceedings in light of the material, newly available evidence he presented on "changed conditions" in Indonesia.

Although the Immigration Judge's and the Board's support for their respective decisions could have been more thoroughly recounted,[3] the "record considered as a whole" satisfies this Court that the Board's refusal to permit a reopening of Mr. Hatta's proceedings was not an abuse of discretion.

In his petition to reopen based on changed country conditions, Mr. Hatta only submitted two pieces of information that post-date the Immigration Judge's and the Board's adverse decisions, i.e., materials that were "not available and could not have been

---

convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States"); 8 U.S.C. § 1158(a)(2)(D) (providing that an application for asylum of an alien may be considered, notwithstanding the one-year filing requirement, "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified . . .").

[3] The Board's decision affirming the Immigration Judge's denial of Mr. Hatta's claims stated that the evidence as to "changed conditions" did not present a material change from the evidence presented in Petitioner's earlier proceeding. R. at 2. However, the record is not entirely clear as to what evidence the Immigration Judge considered in determining that conditions in Indonesia did not warrant Petitioner's fear of persecution should he return there. *See generally* R. at 413–16. The Immigration Judge's decision referred to "background materials making it clear that ethnic Chinese in Indonesia do suffer harassment and discrimination and are sometimes the victims of lawless Moslem rioters," but generally stated that, aside from those materials, Mr. Hatta's claim is "meager, of a generalized nature" and "of little merit." R. at 416.

discovered or presented at the former hearing."[4] 8 C.F.R. § 1003.2(c)(1). The Board

found that evidence unconvincing. R. at 2. The newly available information about

conditions in Indonesia since Petitioner's arrival in the United States in June 2002, even if

reviewed as part of a continuum of Mr. Hatta's evidence concerning earlier conditions,

does not rise to the level of establishing a "reasonable possibility that he will be

persecuted upon a return to that country." *Guo*, 368 F.3d at 561. There is some

indication in the State Department's 2004 report Mr. Hatta submitted that conditions in

Indonesia were worse in 2004 compared with 2003 (e.g., in one region of the country,

violence between Christians and Muslims led to 46 deaths during the period covered by

the 2004 report as compared to 25 during the previous year). R. at 69. However, as the

Respondent notes, the first page of the same 2004 report states "[t]here was no change in

the status of respect for religious freedom during the period covered by this report." R. at

59; Resp. Br. vii. Moreover, while Petitioner's reference to instances of violence between

Christians and Muslims may tend to indicate some atmosphere of religious persecution of

Christians by the religious majority, that evidence is ultimately unpersuasive as to Mr.

---

[4] The Petitioner submitted hundreds of pages of news articles and press releases and three U.S. Department of State International Religious Freedom Reports for Indonesia (years 2002 through 2004), 61 exhibits in total, which purportedly support Petitioner's claim of changed conditions in Indonesia. However, only the Department of State's 2004 report, and a press release issued by the Christian Communication Network, "Indonesia Sunday School Teachers Face Five Years in Prison," post-date the Board's first decision on May 4, 2005.

Hatta's situation because Mr. Hatta has professed to be Buddhist.[5]  In addition, none of

the evidence Mr. Hatta presented to the Board as grounds to reopen his proceedings gave

the Board even any glimpse into his personal circumstances vis à vis current conditions in

Indonesia or any basis upon which there could be a reasonable conclusion of any

exigency as to his life or freedom should he return to Indonesia.[6]

Thus, the Court does not find any abuse of discretion by the Board and will affirm

---

[5] However, the record does contain some discrepancies about Mr. Hatta's faith.  When Mr. Hatta completed his initial Application for Asylum and Withholding of Removal (Form I-589 ), and during his hearing before the Immigration Judge, Mr. Hatta professed to be Buddhist, whereas in his petition to reopen before the Board he claimed to be Christian.  *Compare* R. at 507 (Mr. Hatta's I-589, where he listed religion as "Buddhist") *and* R. at 413 (during the March 30, 2004 hearing, the Immigration Judge noted that Mr. Hatta indicated that "he is a member of the Buddhist faith") *with* R. at 5 ¶ 2 ("[Mr. Hatta] is ethic Chinese and Christian.").  In Petitioner's motion before the Board and in his Brief before this Court, Petitioner appears to cast his claims not as mistreatment of Buddhists specifically, but generally as persecution of non-Muslims generally.  *See*, *e.g.*, R. at 7 (noting worsening conditions with respect to the persecution of Christians and non-Muslims in general); Pet. Br. 16 (arguing that there is a "pattern and practice of persecution against Chinese and non-Muslims in Indonesia").  While severe discrimination by a religious majority against a religious minority may be sufficient grounds for an asylum claim, the only issue here is whether "changed conditions" in Indonesia warrant reopening Petitioner's asylum claims.  For the reasons discussed herein, the facts presented here and the evidence Petitioner has presented do not support such a claim in this case.

[6] During the initial proceedings before the Immigration Judge, Mr. Hatta did not present any evidence that he was personally attacked, harassed or even bothered while he was in Indonesia on the basis of his race or religion.  *See generally* R. at 413–16.  He traveled back and forth to Indonesia in the late-1990's without incident.  *Id.*  His wife and child currently live in Indonesia and, to his knowledge, have not suffered any harm based upon race or religion.  *Id.* Most of Mr. Hatta's submissions throughout the proceedings concerned general violence in the region, which, although certainly present, changes slightly from year-to-year, and has not changed significantly since Mr. Hatta arrived in the United States.

its denial of Mr. Hatta's motion to reopen his proceedings.  The Petition for Review will be DENIED.