

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-2001

# Lu v. Ashcroft

Precedential or Non-Precedential:

Docket 00-3393

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Lu v. Ashcroft" (2001). *2001 Decisions.* Paper 166.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/166

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 24, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3393

XU YONG LU,

      Petitioner

v.

JOHN ASHCROFT,* Attorney General of the United States;
J. SCOTT BLACKMAN, District Director of the United
States Immigration and Naturalization Service,
Philadelphia District; and THE DIRECTOR OF
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; and
CHAIRMAN OF THE BOARD OF IMMIGRATION APPEALS,

      Respondents

APPEAL FROM THE
BOARD OF IMMIGRATION APPEALS

(No. A72 762 151)

Argued October 30, 2000

BEFORE: SCIRICA, NYGAARD, and BARRY,
Circuit Judges.

(Filed July 24, 2001)

_____

* Substituted for Janet Reno pursuant to Federal Rule of Appellate
Procedure 43(c).

John B. Consevage, Esq. (Argued)
Buchanan Ingersoll
213 Market Street
One South Market Square, 3rd Floor
Harrisburg, PA 17101
 Counsel for Petitioner

Michael P. Lindemann, Esq.
Linda S. Wendtland, Esq.
Matthew R. Hall, Esq.
Russell J.E. Verby, Esq. (Argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
 Counsel for Respondent

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Petitioner Xu Yong Lu seeks to reopen immigration proceedings on account of alleged ineffective assistance of counsel. Lu filed a motion to reopen before an Immigration Judge, which was denied. The Board of Immigration Appeals affirmed, in part because Lu failed to comply with the procedural requirements laid out in Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988). We conclude that the Lozada requirements are a reasonable exercise of the Board's discretion; furthermore, the Board did not err in holding that Lu failed to satisfy these requirements. Therefore, we will affirm the denial of Lu's motion to reopen his immigration proceedings.

I.

Xu Yong Lu is a native and citizen of the People's Republic of China ("PRC"). In the summer of 1993, he arrived at the shores of Rockaway Beach, New York, aboard the Golden Venture, a vessel carrying approximately 150 other aliens. Lu claims that he fled the PRC in order to

2

escape persecution under the country's "one couple -- one child" policy. Because Lu has three children, he was subject to a number of fines, threatened with incarceration, and his wife was sterilized.

The Immigration and Naturalization Service of the United States detained Lu shortly after his arrival at Rockaway Beach. The INS instituted exclusion proceedings and Lu requested an attorney. At a hearing conducted on July 2, 1993, Lu's appointed counsel, Michael Usher, admitted the charges against Lu but contended that the INS should seek deportation rather than exclusion. Lu then filed two applications for political asylum or, in the alternative, withholding of deportation.

Immigration Judge Wayne R. Iskra conducted a formal hearing on the merits of Lu's claim on September 1, 1993. In an oral decision, Judge Iskra cited two advisory opinions by the State Department, which both recommended denying political asylum. He also found that Lu's testimony contained numerous contradictions and lacked credibility -- it was "essentially incomplete and he was hesitant." Finally, he noted that a claim for asylum based solely upon China's one-child policy is foreclosed by Board precedent. He therefore denied all claims and ordered Lu excluded and deported. Mr. Usher expressly reserved the right to appeal, and Judge Iskra indicated that an appeal, if desired, had to be filed on or before September 13, 1993. No appeal was filed. Lu contends that his attorney agreed to pursue an appeal; however, he concedes that he had no further contact with Mr. Usher after the hearing.

Almost one year later, Lu filed a pro se habeas corpus petition in the United States District Court for the Middle District of Pennsylvania. The court issued a stay of Lu's deportation and eventually consolidated his petition with those of other Golden Venture detainees. However, on September 5, 1995, the government moved to dismiss the petition because of Lu's failure to timely appeal his original deportation order. In response, Lu requested that the court hold the government's motion in abeyance while he filed a motion to reopen the administrative proceeding, which would allow him to file an untimely appeal to the Board of Immigration Appeals. The District Court dismissed Lu's

3

habeas corpus petition, but nonetheless continued to stay his deportation pending the outcome of his motion to reopen. Lu filed his motion to reopen on September 25, 1996. In it, he argued that Mr. Usher's failure to appeal Judge Iskra's decision constituted ineffective assistance of counsel.

On December 31, 1996, Judge Iskra denied Lu's motion to reopen the administrative proceedings. First, he rejected Lu's contention that Mr. Usher was obligated to file an appeal because he had expressly reserved the right to do so. Judge Iskra stated that "it is not clear whether former counsel owed his client a duty to appeal the case." Even if such a claim had merit, however, Judge Iskra found that Lu had not complied with the procedural requirements of Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988). Specifically, Lu did not establish the existence of an agreement with Mr. Usher to file an appeal, and he failed to adequately explain his decision not to pursue a disciplinary complaint with the bar association. As a result, Lu's claims did not establish the exceptional circumstances necessary to reopen immigration proceedings.

Lu filed a timely appeal with the BIA shortly thereafter. He claimed that Judge Iskra's decision violated his fundamental due process rights. The BIA rejected Lu's arguments "for the reasons set forth in the Immigration Judge's . . . written decision." Lu then filed a second habeas corpus petition in federal court seeking review of the BIA's decision. The District Court transferred the petition to us. Our task, therefore, is to review the denial of Lu's motion to reopen his immigration proceedings.

II.

At the time Lu filed his motion, there was no statutory provision governing the reopening of immigration proceedings.1 See INS v. Doherty, 502 U.S. 314, 322-23,

_____

1. The only existing authority was a regulation promulgated by the Attorney General, which described when such a motion should be denied, rather than granted. See 8 C.F.R. S 3.23(b)(3) (1996); see also Doherty, 502 U.S. at 322-23. Since the filing of Lu's motion, Congress

4

112 S.Ct. 719, 724 (1992) ("There is no statutory provision for reopening of a deportation proceeding."). Instead, "the authority [to reopen derived] solely from regulations promulgated by the Attorney General. . . . [who had] `broad discretion' to grant or deny such motions." Id.; see also INS v. Jong Ha Wang, 450 U.S. 139, 143–45 & n.5, 101 S.Ct. 1027, 1030–32 & n.5 (1981).

We have traditionally disfavored motions to reopen immigration proceedings for the same reason we disfavor "petitions for rehearing and motions for a new trial on the basis of newly discovered evidence." Id. at 323; Katsis v. INS, 997 F.2d 1067, 1070 (3d Cir. 1993). If anything, deportation proceedings are even more disfavored because "as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." Doherty, 502 U.S. at 323, 112 S.Ct. at 724–25; see also INS v. Abudu, 485 U.S. 94, 108, 108 S.Ct. 904, 913 (1988) ("Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case.").

Thus, we review the BIA's decision to deny reopening for abuse of discretion, mindful of the "broad" deference that the Supreme Court would have us afford. See Abudu, 485 U.S. at 110, 108 S.Ct. at 915 ("[T]he reasons for giving deference to agency decisions on petitions for reopening or reconsideration in other administrative contexts apply with even greater force in the INS context."); Doherty, 502 U.S. at 323, 112 S.Ct. at 724–25 ("[T]he abuse–of–discretion standard applies to motions to reopen `regardless of the underlying basis of the alien's request [for relief].' ").

III.

Lu argues that the BIA should have reopened his case because he suffered ineffective assistance of counsel.

_____

has enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104–208, 110 Stat. 3009 ("IIRIRA"). The IIRIRA provides a mechanism for reopening immigration proceedings, see 8 U.S.C. S 1229a(c)(6), but it only applies to motions filed on or after April 1, 1997. See 8 U.S.C. S 1229a. Lu filed his motion to reopen on September 24, 1996.

Immigration proceedings, however, are civil, rather than criminal, in nature; therefore, the Sixth Amendment guarantee of effective counsel does not attach. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483 (1984); Scheidemann v. INS, 83 F.3d 1517, 1520 n.4 (3d Cir. 1996). Nonetheless, petitioners in deportation proceedings enjoy Fifth Amendment Due Process protections. In Lozada v. INS, 857 F.2d 10, 13-14 (1st Cir. 1988), the First Circuit Court of Appeals held that ineffective assistance of counsel could constitute a denial of due process if "the alien was prevented from reasonably presenting his case." See also Hernandez v. Reno, 238 F.3d 50, 55 (1st Cir. 2001) ("[W]here counsel does appear for the respondent, incompetence in some situations may make the proceeding fundamentally unfair and give rise to a Fifth Amendment due process objection."); Castaneda-Suarez v. INS, 993 F.2d 142, 144 (7th Cir. 1993) ("[C]ounsel at a deportation hearing may be so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause."); Ramirez-Durazo v. INS, 794 F.2d 491, 499-500 (9th Cir. 1985).

The government argues, however, that aliens facing exclusion proceedings do not enjoy the same set of rights as those facing deportation. See Landon v. Plasencia, 459 U.S. 21, 32, 103 S.Ct. 321, 329 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). Although we recognize that Plasencia is still good law, see, e.g., Zadvydas v. Underdown, 185 F.3d 279, 294 (5th Cir. 1999) ("Denial of entry is . . . not a deprivation of rights subject to procedural due process, . . . we leave it to Congress to determine the procedures to be used in adjudicating such claims."), we are reluctant to hold that aliens facing exclusion have no recourse against deficient counsel. Such a ruling would simply encourage abuse. Because aliens often do not speak English and are usually unfamiliar with our laws and procedures, they are particularly vulnerable to inadequate counsel. In fact, Congress has long recognized the importance of counsel in immigration

6

proceedings, allowing aliens "the privilege of being
represented (at no expense to the Government) by such
counsel . . . as he shall choose" in any exclusion or
deportation proceeding. See 8 U.S.C. S 1362 (2000); see
also Chlomos v. INS, 516 F.2d 310, 314 (3d Cir. 1975).
Accordingly, we hold that a claim of ineffective assistance,
if properly established, could constitute proper grounds for
reopening an exclusion proceeding. Hence, we must now
decide whether the facts of this case warrant a reopening.

IV.

The BIA rejected Lu's claims because he did not comply
with the procedural requirements set forth in Matter of
Lozada, 19 I. & N. Dec. 637 (BIA 1988). This is the first
opportunity we have had to review the Board's three-prong
test for analyzing ineffective assistance claims. [2] We
conclude that it is a reasonable exercise of the Board's
discretion.

In Lozada, the respondent filed a Notice of Appeal (Form
I-290A), but failed to submit a written brief or statement in
support of his position. After over a year of inactivity, the
BIA dismissed the appeal. Almost two years later, however,
the respondent filed a motion to reopen the proceedings,
claiming that his counsel's failure to submit supporting
materials constituted ineffective assistance of counsel. The
Board rejected the respondent's claim and laid out a three-
step procedure for establishing "egregious" ineffective
assistance that would justify reopening:

> A motion based upon a claim of ineffective assistance
> of counsel should be supported by an affidavit of the
> allegedly aggrieved respondent attesting to the relevant
> facts. . . . [T]hat affidavit should include a statement
> that sets forth in detail the agreement that was entered
> into with former counsel with respect to the actions to
> be taken on appeal and what counsel did or did not
> represent to the respondent in this regard.
> Furthermore, before allegations of ineffective assistance

---

2. We made a passing reference to Lozada in Green v. INS, 46 F.3d 313,
320 (3d Cir. 1995), but never addressed its merits.

of former counsel are presented to the Board, former counsel must be informed of the allegations and allowed the opportunity to respond. Any subsequent response from counsel, or report of counsel's failure or refusal to respond, should be submitted with the motion. Finally, if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not.

Lozada, 19 I. & N. Dec. at 638. The Board adopted such a "high standard" in order to assess the "substantial number" of ineffective assistance claims that it receives. See id.

The BIA later elaborated on the third prong of the Lozada test, the so called "bar complaint" requirement, in In re Rivera, 21 I. & N. Dec. 599 (BIA 1996). The Board noted that federal disciplinary regulations, which govern attorneys practicing before Immigration Judges and the BIA, are not meant to be comprehensive. Instead, the Board relies"on the disciplinary process of the relevant jurisdiction's bar as the first, and ordinarily the fastest, means of identifying and correcting possible misconduct." Id. Lozada's bar complaint requirement "not only serves to deter meritless claims of ineffective assistance of counsel but also highlights the standards which should be expected of attorneys who represent aliens in immigration proceedings." Id. In addition, the Board recognized that although it might often be possible to resolve the factual questions surrounding the quality of an attorney's representation without a bar complaint, such a requirement serves numerous important purposes: "it increases our confidence in the validity of the particular claim, . . . it reduces the likelihood that an evidentiary hearing will be needed, . . . it serves our long-term interests in policing the immigration bar, [and it] protects against possible collusion between counsel and the alien client." Id. Finally, the Board concluded that a bar complaint requirement was not a great "inconvenience" when viewed in light of an alien's request to reopen costly and time-consuming administrative proceedings. Id.

8

A number of Circuits have held that the Lozada requirements are not a per se abuse of the BIA's discretion. See, e.g., Hernandez, 238 F.3d at 55; Lata v. INS, 204 F.3d 1241, 1246 (9th Cir. 2000) ("[T]he Board has laid out a comprehensive procedure that a petitioner should follow . . . and our sister circuits have adopted its reasoning."); Lara v. Trominski, 216 F.3d 487, 495-99 (5th Cir. 2000); Esposito v. INS, 987 F.2d 108, 110 (2d Cir. 1993). None has explicitly rejected Lozada.3 See, e.g., Huicochea-Gomez v. INS, 237 F.3d 696, 699 (6th Cir. 2001); Henry v. INS, 8 F.3d 426, 440 (7th Cir. 1993). We generally agree that the BIA's three-prong test is not an abuse of the Board's wide-ranging discretion.

There are inherent dangers, however, in applying a strict, formulaic interpretation of Lozada. In particular, we are concerned that courts could apply Lozada's third prong so strictly that it would effectively require all petitioners claiming ineffective assistance to file a bar complaint. Lozada explicitly allows petitioners to provide a reasonable explanation for not filing a complaint. In spite of this apparent flexibility, courts generally have rejected petitioners' explanations. For example, in In re Rivera, 21 I. & N. Dec. 599, the BIA refused to accept the petitioner's decision not to file a complaint because the ineffective assistance was likely the result of "a postal error or an error of inadvertence." The Board found this explanation

_____

3. Lu contends that the Fourth Circuit Court of Appeals has expressly rejected the bar complaint requirement of Lozada . He relies solely upon Figeroa v. United States INS, 886 F.2d 76, 79 (4th Cir. 1989) ("[W]hile petitioner took no `action' against [his attorney], we fail to see how this indicates that [his attorney's] representation was effective."). We note, however, that in In re Rivera, 21 I. & N. Dec. 599, the BIA stated that "[i]t is not clear whether the Fourth Circuit fully understood the basis for our Lozada requirements, as Lozada itself is not mentioned in Figeroa." The Board then went on to defend and apply the bar complaint requirement. On appeal, the Fourth Circuit Court of Appeals affirmed the BIA and held that its analysis of the "ineffective assistance of counsel claim was appropriate and necessary." Rivera v. INS, 122 F.3d 1062 (4th Cir. 1997); see also Stewart v. INS, 181 F.3d 587, 596 (4th Cir. 1999) (dismissing petitioner's ineffective assistance claim in part because she failed "to assert her claim . . . to the BIA in the manner prescribed by Matter of Lozada").

"inadequate" and suggested that the petitioner had improperly minimized the attorney's misconduct. In fact, in most cases where petitioners failed to file a bar complaint, courts have rejected motions for reopening. See, e.g., Shukla v. INS, 2001 WL 176799 at *1–2 (9th Cir. Feb. 16, 2001) (unpublished decision); Huicochea-Gomez v. INS, 237 F.3d 696, 699 (6th Cir. 2001); Lara, 216 F.3d at 498–99; Soniregun v. INS, 165 F.3d 19 (4th Cir. 1998) (unpublished decision); Minasian v. INS, 117 F.3d 1425 (9th Cir. 1997) (unpublished decision); Pimentel v. INS, 8 F.3d 809 (1st Cir. 1993) (unpublished decision); Miranda v. INS, 946 F.2d 1565 (D.C. Cir. 1991) (unpublished decision).

However, only in rare circumstances have courts refused to reopen immigration proceedings solely because a petitioner failed to file a bar complaint. Instead, a number of courts have adopted a broader interpretation of Lozada. See, e.g., Castillo-Perez v. INS, 212 F.3d 518, 526 (9th Cir. 2000) ("While the requirements of Lozada are generally reasonable, they need not be rigidly enforced where their purpose is fully served by other means."); Lopez v. INS, 184 F.3d 1097, 1100 (9th Cir. 1999) (excusing the lack of a bar complaint against "a notary posing as an attorney"); Esposito, 987 F.2d at 111 (excusing bar complaint requirement where petitioner mistakenly believed that attorney had already been suspended from the practice of law). We generally agree with their approach. In many, if not most, cases, petitioners alleging ineffective assistance should file disciplinary complaints. However, this is not an absolute requirement, and we stress that the failure to file a complaint is not fatal if a petitioner provides a reasonable explanation for his or her decision.[4]

V.

Judge Iskra rejected Lu's motion for reopening because Lu had failed to satisfy Lozada's first and third procedural

_____

4. Because of the often unique and highly variable factual circumstances surrounding immigration matters, we are reluctant to define what would constitute a "reasonable explanation" for not filing a complaint. However, it is important that the Board, before denying a motion for reopening, details its reasons for rejecting a petitioner's explanation.

10

requirements. First, he had not "set forth in detail" an attorney-client agreement:

> [Lu] did not file documentation to support the claim of ineffective assistance of counsel, nor did he discuss in sufficient detail any effective acts by previous counsel to warrant a motion to reopen. Without evidence of the agreement between the Applicant and the former attorney, the Court cannot find there was ineffective assistance of counsel.

Judge Iskra was especially persuaded by the admitted lack of communication between Lu and his attorney following the formal hearing. In fact, Lu "began to act on his own behalf . . . . This leads the Court to believe that there was no agreement." Second, Judge Iskra noted that Lu had not filed a disciplinary bar complaint against his attorney. Lu declined to do so because his former counsel had acted on a pro bono basis. Judge Iskra found this explanation to be insufficient. The BIA affirmed these findings "for the reasons set forth in the Immigration Judge's December 31, 1996, written decision."

We conclude that the BIA did not abuse its discretion in adopting Judge Iskra's findings. First, there is nothing in the record to suggest that Mr. Usher agreed to file an appeal after the sentencing hearing. Instead, Lu implies that Mr. Usher obligated himself when he expressly reserved the right to appeal. We disagree. Although Mr. Usher reserved Lu's rights, there is no evidence that he agreed to continue his representation. In response, Lu suggests that the absence of evidence merely reflects his "total lack of ability to communicate directly to Mr. Usher because of the language barrier, his lack of formal education and his total ignorance of the American justice system." We sympathize with Lu's position, but these obstacles are not unique. Quite the contrary -- they are common attributes shared by many individuals engaged in immigration proceedings. If we were to accept Lu's arguments, we would seriously undermine the BIA's ability to assess the "substantial number" of claims it receives, and thus frustrate the stated goal of Lozada.

The Board was also within its discretion to reject Lu's

11

explanation for not filing a bar complaint. An attorney's obligation to his client is not diminished by the pro bono nature of his representation; hence, we cannot sanction Lu's failure to lodge a complaint simply because Mr. Usher was not paid. The purpose of the third prong of the Lozada test, as well articulated by the BIA in In re Rivera, 21 I. & N. Dec. 599 (BIA 1996), is to reinforce "the standards which should be expected of attorneys who represent aliens in immigration proceedings." Complaints of ineffectiveness also give bar associations an opportunity to conduct a legal "post mortem" of an action to determine if one of its members performed below the horizon of professional competence. We believe that accepting Lu's explanation would effectively lower the bar for attorneys representing clients pro bono. Because all clients deserve the same level of basic competency from their attorneys, we are unwilling to endorse a lower standard for pro bono representation. Thus, although a bar complaint is not always required under Lozada, the BIA's decision to reject Lu's explanation was not an abuse of discretion. As a result, we will affirm the BIA's denial of Lu's motion to reopen his immigration proceedings.5

VI.

For the foregoing reasons, we will affirm the denial of Lu's motion to reopen.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

5. Because we agree that Lu did not satisfy the procedural requirements of Lozada, we need not address whether Lu suffered prejudice as a result of Mr. Usher's performance or the Board's alternative conclusion that "a claim asserting ineffective assistance of counsel as the reason for untimeliness [is not] a proper ground for reopening proceedings."

12