**Koksal YILMAZ, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States.**

No. 02–3968.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 28, 2003.

Decided Nov. 13, 2003.

**414**

Maria I. Thomas, Thomas & Thomas, Princeton, NJ, for Petitioner.

Linda S. Wendtland, Donald A. Couvillon, Terri J. Scadron, William C. Minick, United States Department of Justice, Washington, DC, for Respondent.

Before SCIRICA, Chief Judge, NYGAARD, and AMBRO, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

In this appeal, Koksal Yilmaz asks this Court to reverse the Board of Immigration Appeal's ("BIA's") denial of his "motion for reconsideration" and remand so that he can apply for adjustment of status. We find that the BIA did not abuse its discretion by characterizing Yilmaz's motion as a motion to reopen and denying that motion, although the BIA did improperly analyze the numerical limitations issue.

We have jurisdiction to review the BIA's final order under 8 U.S.C. § 1252(a)(1). We review the BIA's denial of a motion to reopen or a motion for reconsideration for abuse of discretion. *Xu Yong Lu v. Ashcroft,* 259 F.3d 127, 131 (3d Cir.2001) (mo-

tion to reopen); *See Nocon v. INS,* 789 F.2d 1028, 1033 (3d Cir.1986) (motion to reconsider).

Yilmaz, a native of Turkey, entered the United States on October 28, 1993, with a visitor's visa. Under the visa's terms, Yilmaz was authorized to remain in this country until April 27, 1994. Yilmaz was not authorized to work. On December 27, 1993, during an investigation of a restaurant in Levittown, Pennsylvania, Immigration and Naturalization Service ("INS") officers found that Yilmaz was working without authorization. On December 28, 1993, the INS interviewed Yilmaz and, subsequent to that interview, issued an Order to Show Cause charging Yilmaz with deportability. Neither during this interview nor at any other time does Yilmaz appear to have been given oral warnings as to the consequences of failing to appear for immigration hearings.

On February 16, 1994, the Immigration Court sent a notice of hearing to Yilmaz's last known address. This notice advised Yilmaz that a deportation hearing was scheduled for July 6, 1994. This notice was returned as unclaimed.

On July 6, 1994, the Immigration Judge ("IJ") conducted Yilmaz's deportation hearing but Yilmaz did not appear. The IJ found Yilmaz deportable and ordered him deported *in absentia.* The notice of this deportation order was also sent to Yilmaz's last known address.

On December 19, 1995, Yilmaz married a United States citizen. On October 23, 1996, more than two years after Yilmaz's deportation order was issued, Yilmaz filed a motion to reopen his proceedings with the IJ (the first motion to reopen).[1] Yil-

---

1. This motion was filed prior to April 1, 1997 and, therefore, is not subject to the reopening mechanisms created by Congress in the Illegal Immigration Reform and Immigrant Re-

sponsibility Act of 1996 (IIRAIRA). *See* 8 U.S.C. § 1229a; *see also Lu,* 259 F.3d at 131 n. 1. Rather, it is governed by pre-IIRAIRA regulations.

maz's sole argument in this motion was that he now had the ability to apply for adjustment of status based on his marriage. The IJ denied this motion and Yilmaz appealed to the BIA. The BIA dismissed his appeal, finding that Yilmaz's motion to reopen was untimely under the applicable statutes and regulations and that Yilmaz had failed to submit an adjustment of status application with that motion. After this dismissal, Yilmaz filed a motion he captioned as a motion for reconsideration (the second motion to reopen). To this motion he attached the appropriate application for adjustment of status and supporting documentation. The BIA, however, found that his motion was actually a motion to reopen because it included new evidence. The BIA then denied this second motion to reopen because it determined that the motion was numerically barred. It is from this denial that Yilmaz appealed to this Court.

## A. Recharacterization of Motion

■ The BIA was correct in recharacterizing Yilmaz's motion for reconsideration as a motion to reopen. This motion, though titled a motion for reconsideration, alleged no legal or factual errors in the BIA's order. Rather, the motion's sole purpose was to introduce the application for adjustment of status and supporting documentation that was absent from Yilmaz's first motion to reopen. Accordingly, the motion sought to introduce new evidence and was a motion to reopen. 8 U.S.C. § 1229a(c)(5)-(6).

## B. Numerical Limitations

■ Once recharacterized as a motion to reopen, the BIA denied this second

motion based on the numerical limitations for such motions contained in 8 C.F.R. § 3.2(c)(2).[2] The BIA's analysis on this point is incorrect. While 8 C.F.R. § 1003.2(c)(2) does generally limit parties to one motion to reopen in proceedings, certain motions are expressly excepted from that regulation. The applicable section begins, "Except as provided in paragraph (c)(3) of this section ..." 8 C.F.R. § 1003.2(c)(2). Section (c)(3) instructs that "... the time *and numerical* limitations set forth in paragraph (c)(2) ... shall not apply to a motion to reopen proceedings:

> (i) Filed pursuant to the provisions of § [100]3.23(b)(4)(iii)(A)(*1*) or § [100]3.23(b)(4)(iii)(A)(*2*)."

8 C.F.R. § 1003.3(c)(3) (emphasis added).

The referenced section, 8 C.F.R. § 1003.23(b)(4)(iii)(A), reads:

> An order entered in absentia in deportation proceedings may be rescinded only upon a motion to reopen filed:
>
> (*1*) Within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances beyond the control of the alien ...; or
>
> (*2*) At any time if the alien demonstrates that he or she did not receive notice or if the alien demonstrates that he or she was in federal or state custody and the failure to appear was through no fault of the alien.

The IJ entered its order deporting Yilmaz *in absentia.* Therefore, this case falls squarely within Section 1003.23(b)(4)(iii)(A). As such, it is excepted from Section 1003.2(c)(2)'s numerical

**2.** On February 28, 2003, after the BIA's decision in this matter, the relevant regulations were renumbered. Presently, 8 C.F.R. § 3.2(c)(2) can be found at 8 C.F.R.

§ 1003.2(c)(2). For the remainder of this opinion the new numerical designations will be used for all regulations.

**416**

limitations. For this reason, the BIA was incorrect in denying Yilmaz's second motion to reopen based solely on the serial nature of that motion.

## C. Untimeliness of First Motion to Reopen

█ Although the BIA erred in its reasoning for denying Yilmaz's second motion to reopen, its denial of that motion was not an abuse of discretion. As the BIA made clear in its order dismissing Yilmaz's appeal, his first motion to reopen was both lacking the proper adjustment of status form and untimely. Yilmaz's first motion to reopen is governed by the regulations found at 8 C.F.R. §§ 1003.2(c) and 1003.23(b)(3) because, as he argues and as the BIA appears to have found, he did not receive oral warnings regarding the consequences of failing to appear at immigration hearings. *Matter of M–S,* 22 I. & N. Dec 349, 355 (BIA 1998). Under the applicable regulations, Yilmaz's motion to reopen had to be filed within ninety days of his deportation order or by September 26, 1996, whichever date was later. 8 C.F.R. § 1003.23(b)(1). Because Yilmaz's deportation order was issued on July 6, 1994, he had to file his motion to reopen by September 26, 1996. Yilmaz did not file his

first motion to reopen by that date and, instead, filed it on October 23, 1996.

The only exception to this time deadline requires Yilmaz to demonstrate that he did not receive proper notice or that he was in state or federal custody when his order of deportation was issued. 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2). Yilmaz did not even attempt to demonstrate these circumstances to the IJ and, therefore, his first motion to reopen was untimely.

Yilmaz's second motion to reopen made no mention of the untimeliness of this first motion and did not even address the BIA's thorough discussion of this point.[3] Therefore, while not numerically barred, Yilmaz's second motion to reopen was properly denied as it did not address, much less correct, the untimeliness of his first motion to reopen.[4]

CONCLUSION

For the foregoing reasons, we will affirm the BIA's order.

**3.** On appeal, Yilmaz attempts to argue that the BIA should have equitably tolled the time limitation applicable to his first motion for reconsideration. Yilmaz did not raise this argument in his second motion to reopen, or at any other point with the BIA. Accordingly, we will not address it. *Alleyne v. INS,* 879 F.2d 1177, 1182 (3d Cir.1989).

**4.** We note that, although the BIA's denial of Yilmaz's second motion to reopen only discussed the impropriety of serial motions to reopen, the BIA had previously analyzed the time-bar issue and concluded that Yilmaz's first motion to reopen was time barred. Yilmaz's second motion to reopen did not address this portion of the BIA's decision. This

is not a case where we must remand to the BIA because it did not consider all relevant factors or where we had to search the record to find an alternative basis for the BIA's decision. Rather, although the order denying Yilmaz's second motion to reopen did not discuss the timeliness issue, the BIA throughly discussed that issue to conclusion in its dismissal of Yilmaz's appeal and this basis for denying the motion to reopen is readily ascertainable. Accordingly, we are not prevented from affirming the BIA on this clear ground. *W.R. Grace & Co. v. EPA,* 261 F.3d 330, 338 (3d Cir.2001) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).