OPINION
PER CURIAM.
Petitioner Long Quan Piao, an ethnically Korean citizen of China, entered the United States without inspection after crossing the border at Texas on August 24, 2007. He is removable under Immigration & Nationality Act (“INA”) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien who is present in the United States without being admitted or paroled. On October 15, 2007, Piao applied for asylum under INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming a fear of persecution, that is, arrest and prosecution, on account of his past efforts to assist two North Korean refugees who crossed the border near his house.
In his asylum application, Piao stated that he was born on October 3, 1971 in Longjing City, Jilin Province, where the Korean Chinese live in a “compact” community. A.R. 157. Longjing City is separated from North Korea by a river which freezes solid in the winter, providing a way for North Koreans to enter China illegally. On the morning of December 2, 2006, Piao found a man and a boy lying in his yard when he opened the door. See id. They kneeled down and begged him not to report them. They were hungry and pale, and Piao decided to help them. He let them stay at his house. See id. During the night the North Korean man told of his and his wife’s attempt to flee North Korea. His wife had been captured and he feared she might already be dead. See id.
On December 10, 2006, according to Piao’s statement in support of his asylum application, the police raided his house. A.R. 161. He was arrested and the North Korean refugees were taken away.[1] At the police station, he was interrogated and beaten with a baton, so badly that at one point he lost consciousness. See id. During the detention, he was made to do physical labor and to write a statement of confession. On December 20, 2006, Piao was released from jail after promising not to give further aid to North Korean refugees. See id. After Piao was released, he was ordered to write a “self-criticism statement” at home, and he was required to report every week to the police station. *363 Id. Piao was followed by the police continuously thereafter and he became frightened and restless. See id. At the urging of his wife, who already was in the United States, he made the decision to flee China.
The Immigration Judge held a merits hearing on July 28, 2008, at which Piao testified. He was represented by counsel, and, in support of his application he submitted a Medical Diagnosis Certificate, which indicated that he was evaluated on January 8, 2007 at KaishanTun Town Hospital of Longjing City for injuries to his head and face. A.R. 104. The certifícate stated that hospitalization was recommended. In addition, the 2007 State Department Country Report on Human Rights Practices for China was admitted into evidence, A.R. 38-100, and it states that the Chinese government does not protect North Korean refugees. It forces their repatriation even though there is reason to fear that they will be persecuted upon their return and some might even be executed. A.R. 59. The government also arrests ordinary citizens who provide food, shelter and other assistance to North Koreans. See id. At the conclusion of the hearing, the IJ denied all relief and ordered Piao removed to China. A.R. 30-31. The IJ’s Order stated that any appeal was due by August 27, 2008. See id.
Piao’s counseled Notice of Appeal from a Decision of an Immigration Judge, A.R. 19-22, was received by the Board of Immigration Appeals on August 29, 2008, two days beyond the due date. In a decision dated September 22, 2008, the Board dismissed the appeal as untimely because it was due on August 27, 2008. The Board reasoned that a Notice of Appeal (Form EOIR-26) must be filed -within 30 calendar days of an Immigration Judge’s oral decision under 8 C.F.R. § 1003.38(b) (“The Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge (Form EOIR-26) shall be filed directly with the Board of Immigration Appeals within 30 calendar days after the stating of an Immigration Judge’s oral decision or the mailing of an Immigration Judge’s written decision.”). See also 8 C.F.R. § 1003.38(c) (“The date of filing of the Notice of Appeal (Form EOIR-26) shall be the date the Notice is received by the Board.”).
On October 17, 2008, Piao, now proceeding pro se, attempted to file a motion for reconsideration of the Board’s dismissal of his appeal. The Board rejected the motion for failure to include the required filing fee or a fee waiver request form, and failure to properly serve the Department of Homeland Security. On October 28, 2008, Piao re-filed his motion, and it was accepted by the Board. Piao contended that retained counsel violated his right to due process by missing the appeal deadline. Piao alleged generally and without discussion that he was prejudiced by counsel’s performance and he asked to be allowed to file a brief. A.R. 8-9.
In a decision dated April 9, 2009, the Board denied reconsideration on three grounds: (1) the October 28, 2008 reconsideration motion was untimely because it was not filed within 30 days of the Board’s September 22, 2008 decision as required by 8 C.F.R. § 1003.2(b); (2) the motion failed to demonstrate prejudice under Matter of Compean, 24 I. & N. Dec. 710, 734-35 (A.G.2009), which states that to prevail on a deficient performance of counsel claim, an alien must establish that it is more likely than not that he would have been entitled to the ultimate relief he was seeking; and (3) Piao failed to comply with the procedural requirements of Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988).
Piao timely petitions for review of the Board’s decision denying his motion for reconsideration. A motions panel of this Court granted his motion for a stay of removal.
*364 We will deny the petition for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Review of the Board’s denial of a motion to reopen or motion for reconsideration is for abuse of discretion only. See Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir.2002). See also Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 96, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). Under this standard, we will reverse the Board’s decision only if it is arbitrary, irrational, or contrary to law. Sevoian, 290 F.3d at 174. See also Shardar v. Att’y Gen. of U.S., 503 F.3d 308, 311-12 (3d Cir.2007). The Board first decided that Piao’s motion for reconsideration was untimely because it was not filed within 30 days of the Board’s September 22, 2008 decision, as required by 8 C.F.R. § 1003.2(b)(2). However, as the government has noted in its brief, see Respondent’s Brief, at 6 n. 2, although Piao styled his motion as one for reconsideration, he cited new evidence — the alleged ineffective assistance of his former counsel — in support of the motion. A motion to reconsider properly challenges determinations of law and fact already made by the Board. 8 C.F.R. § 1003.2(b)(1). In contrast, a motion to reopen seeks to present new facts that would entitle the alien to relief from removal. 8 C.F.R. § 1003.2(c)(1). Since Piao sought to introduce new facts concerning his prior counsel’s negligence in filing the notice of appeal to the Board two days late, his motion was properly construed as a motion to reopen. A motion to reopen must be filed no later than ninety (90) days after the date on which the final administrative decision was rendered. See id. at 1003.2(c)(2). As such, Piao’s motion was timely filed, and the Board’s conclusion that it was not is contrary to law. Sevoian, 290 F.3d at 174.
The Board next held, in summary fashion, that Piao’s motion for reconsideration did not demonstrate that he suffered prejudice under the Compean standard, and, in fact, he felt “well short” of showing that he would have prevailed on his claim for asylum. A.R. 2. Piao contends in his brief on appeal that the Board erred by holding him to the Compean standard of prejudice because he filed his motion before Compean was announced by the Attorney General. Moreover, the record evidence shows that he has at least a substantial possibility of success on the merits of his asylum and withholding claims. See Appellant’s Informal Brief, at 3. The government counters that Piao has failed to demonstrate prejudice even under the pre-Compean standard for judging deficient performance claims. See Respondent’s Brief, at 15.
The Board decided Piao’s motion during the five-month window when Compean, 24 I. & N. Dec. 710, was in effect,[2] and we note that Compean’s prejudice standard was intended to apply regardless of when the petitioner’s motion to reopen was filed, see id. at 741. In Compean, the Attorney General ruled that, to establish prejudice arising from a lawyer’s deficient performance, the alien must show that, but for the deficient performance, it is more likely than not that he would have been entitled to the ultimate relief he was seeking, see id. at 733-34. Compean’s “more likely than not” standard was considered by the Attorney General to be truer to the Fifth Amendment than a “reasonable probability” standard. 24 I. & N. Dec. at 734.[3]
*365 However, quite apart from what standard for judging counsel’s allegedly deficient performance applied, or should have applied, are questions about the Board’s basis for making any prejudice determination at all in Piao’s case. On June 23, 2009, the Certified Administrative Record was filed in this Court. It contained, in pertinent part, Piao’s asylum application, the Medical Diagnosis Certificate, the 2007 State Department Country Report, the IJ’s Order, and Piao’s Notice of Appeal, in which he contended in the “statement of reasons” box, A.R. 20, that the IJ focused on minor inconsistencies between his testimony and his asylum application in failing to credit his account of being persecuted by Chinese authorities for aiding North Korean refugees. The Certified Administrative Record did not contain the IJ’s Oral Decision, and it also did not contain the transcript from the July 28, 2008 merits hearing. In emphatically concluding that Piao’s showing of prejudice fell “well short” of Campean, the Board made no references whatever to the IJ’s reason for his conclusion that Piao did not qualify for asylum or withholding of removal, made no references to the hearing transcript, and omitted any substantive analysis of whether the IJ improperly focused on minor inconsistencies in failing to credit Piao’s overall case. A prejudice determination based solely on Piao’s motion and without the benefit of at least the IJ’s reasoning was irrational. Sevoian, 290 F.3d at 174.[4]
Last, the Board denied Piao’s motion on the ground that he failed to comply with the procedural requirements of Matter of Lozada, 19 I. & N. Dec. 637. A due process claim based on an allegation of ineffective assistance of counsel must meet certain procedural requirements established by the Board. See Lu v. Ashcroft, *366 259 F.3d 127, 132 (3d Cir.2001) (discussing the Lozada requirements). These procedural requirements, which we have concluded are generally reasonable, see Zheng v. Gonzales, 422 F.3d 98, 106 (3d Cir.2005); Lu, 259 F.3d at 132, are that: (1) the alien must support the claim with an affidavit that sets forth in detail the agreement that was entered into with former counsel with respect to the actions to be taken on appeal and what counsel did or did not represent to the petitioner in this regal'd; (2) the alien must inform former counsel of the allegations and provide counsel with the opportunity to respond, and this response should be submitted with the motion alleging ineffective assistance, and (3) the alien must state whether a complaint has been filed with appropriate disciplinary authorities, and if not, why not. Lu, 259 F.3d at 132 (citing Lozada, 19 I. & N. Dec. at 639). We have not required strict compliance with the Lozada procedural requirements where their purpose is fully served by other means. Lu, 259 F.3d at 134 (alien’s failure to file disciplinary complaint against his former attorney is not fatal to his claim of ineffective assistance where he provides reasonable explanation for his failure to do so).
Here, Piao failed to comply with any of the Lozada requirements and, especially with respect to the first two requirements, their purpose has not been fully served by other means. Piao did not set forth in detail the agreement he had with former counsel with respect to the actions to be taken on appeal and what counsel did or did not represent to him in this regard, nor did he state that he informed counsel about his allegations and invited him to respond. Moreover, in his brief on appeal, Piao states only that his allegations of ineffectiveness should be considered on the merits even though he did not comply with the bar complaint requirement. See Informal Brief, at 4. Piao has made no attempt to explain why he has omitted certain relevant facts about his agreement with former counsel with respect to taking an appeal to the Board.
Because of the failure to comply even minimally with the Lozada requirements, the Board had no way to evaluate effectively whether former counsel’s performance was, in fact, deficient. Nor do we. The Notice of Appeal, A.R. 19-22, indicates that both Piao and his former counsel signed the Notice of Appeal on its due date, August 27, 2008, A.R. 20-21. Former counsel signed the Proof of Service, which indicates only that the Notice of Appeal was “mailed or delivered” on “8-27-08 to Chief Counsel Office at 970 Broad St., Newark, NJ 07102.” A.R. 21 (emphasis added). A copy of a Postal Money Order dated August 26, 2008, only one day before the due date, and payable to the Board from Piao in the amount of $110.00, also appears in the Certified Administrative Record. A.R. 27. None of this information by itself explains why the Notice of Appeal was two days late.
Obviously, the Notice of Appeal, because it was not completed until the due date, had to be hand-delivered and not mailed, but because of Piao’s silence on the matter of the agreement between him and former counsel, the reason for the lateness could include factors beyond former counsel’s control or might even be attributable to Piao himself. Indeed, as the government suggests, the untimely filing may have been caused by factors beyond the control of either former counsel or Piao, such as an error on the part of the service they may have hired to deliver the Notice of Appeal. See Respondent’s Brief, at 13-14. Because the Board was left to speculate as to the cause of the late-by-only-two-days filing, it did not act arbitrarily, capriciously, or contrary to law in denying Piao’s motion seeking reopening of his appeal on the basis of former counsel’s alleged ineffective assistance. See Lu, 259 F.3d at 134 *367 (denying petition for review where, in part, alien had not set forth relevant facts in sufficient detail as required by the first prong of Lozada).
We will deny the petition for review.

. Piao told the asylum officer that he thought a neighbor had reported him. A.R. 101.

. Compean was decided on January 7, 2009; the Board denied Piao’s motion on April 9, 2009. Compean was vacated (except to the extent that it affirmed on the merits) on June 3, 2009, 25 I. & N. Dec. 1.

. A claim of ineffective assistance of counsel in removal proceedings is cognizable under the Fifth Amendment as a violation of that amendment’s guarantee of due process. In Fadiga v. Att’y Gen. of U.S., 488 F.3d 142 (3d Cir.2007), we held that a prejudice standard *365 similar to the one the Supreme Court established for Sixth Amendment ineffective assistance of counsel claims, namely "a reasonable probability that, but for counsel’s professional errors, the result of the proceeding would have been different,” should apply in the immigration context. Id. at 159.

. Following the filing of the Certified Administrative Record, our court staff made an informal request that the IJ's Oral Decision be produced. Cf. Fed. R.App. Pro. 16(a) ("The record on review or enforcement of an agency order consists of: (1) the order involved; (2) any findings or report on which it is based; and (3) the pleadings, evidence, and other parts of the proceedings before the agency.”); Fed. R.App. Pro. 16(b) (where omissions in record exist court may direct that supplemental record be prepared and filed); Consumers Union of U.S. v. Federal Power Comm’n, 510 F.2d 656, 661 (D.C.Cir.1975) (appellate Rule 16(b) "gives courts of appeals wide latitude in correcting omissions from the agency record under review”). The hearing tapes were located and the Oral Decision and hearing testimony were transcribed and provided to us (and to Piao) by the Office of Immigration Litigation. We have since reviewed the IJ's decision and Piao's hearing testimony, and we know, without reference to the Board's decision, that the IJ determined that Piao did not testify credibly on a crucial part of his story. See Immigration Judge's Decision, at 9-10. Piao testified that he was held for 28 days, and that he was released from detention on or about January 7, 2008. The January 8, 2007 Medical Diagnosis Certificate was intended to corroborate his testimony that he was released 28 days after December 10, 2007 and required immediate medical assistance for injuries suffered as a result of being beaten. In contrast, in his asylum application, Piao stated clearly that he was released on December 20, 2007, ten days after being arrested. See id. The IJ's finding of an inconsistency in this important part of Piao’s case is supported by comparing his hearing testimony, N.T., 7/28/08, at 32-33, 42-3, with his asylum application, A.R. 157, 161. Thus, we might independently conclude that counsel's alleged negligence in not timely appealing to the Board did not prejudice Piao's ultimate claim for asylum and withholding of removal, but our review is limited to whether the Board abused its discretion; it is for the Board in the first instance properly to address the question of prejudice.