NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4674
_____

KOLE KOLAJ;
MARI KOLAJ,
                    Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(A078-230-846 & A078-230-847)
Immigration Judge: Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 6, 2011

Before:  BARRY, HARDIMAN and STAPLETON, Circuit Judges

(Opinion filed: April 7, 2011)
_____

OPINION
_____

PER CURIAM.

        Petitioners, Kole and Mari Kolaj, seek review of a Board of Immigration Appeals'

("BIA") decision denying their untimely filed motion to reopen proceedings.  We will

1

deny the petition for review.

I.

Petitioners, husband and wife, are natives of the former Yugoslavia, from a region that is now the nation of Kosovo. In 1998, they left their homeland for Germany, where they sought, and were denied, asylum. In 2000, petitioners and their two minor children arrived in the United States. They were admitted under the visa waiver pilot program, 8 U.S.C. § 1187, and the lead petitioner, Kole, applied for asylum, with his wife and children seeking relief derivatively. The government initiated asylum-only proceedings and charged petitioners as removable for violating the visa waiver pilot program. Petitioners conceded removability before an Immigration Judge ("IJ") and sought asylum, withholding of removal, and Convention Against Torture ("CAT") relief.

Kole, an ethnic Albanian, was a member of the Democratic League of Kosovo ("DLK"), engaging in political protests and other activities. He also belonged to the League of Legality in Kosovo, working to reopen Albanian schools. In 1997, he was involved in a demonstration and arrested. Serbian police detained Kole for two nights, and allegedly kicked and punched him. In January 1998, three Serbian police officers came to the family home looking for Kole, who was not present. The officers issued a summons, and allegedly beat Mari and Kole's mother with a stick. At the police station the next day, the police allegedly beat Kole with a rubber stick, questioned him, and released him after one day. In May 1998, the three Serbian police officers returned to the family home looking for Kole, who again was not present. Mari testified that these

2

officers beat and raped her, and briefly held her in custody. Petitioners predicated their claims for relief upon Kole's past persecution and a claimed fear of future persecution in Kosovo at the hands of Serbian authorities.

In January 2001, the IJ denied relief, rejecting the credibility of petitioners' testimony and finding insufficient corroboration for their claims. The IJ alternatively denied relief due to changed country conditions in Kosovo. On April 9, 2003, the BIA dismissed petitioners' appeal. Assuming petitioners could prove past persecution on account of a protected ground, the BIA found that country conditions in Kosovo had changed fundamentally, which was the same reason that Germany had cited in refusing to grant asylum to petitioners. The BIA thus concluded that the presumption of a well-founded fear of future persecution was overcome, and that petitioners had failed to show a well-founded fear on account of a protected ground. The BIA also declined to grant asylum based on past persecution alone.

Petitioners did not petition for review of the BIA's final order of removal. Instead, more than five years later, in September 2008, they filed a motion to reopen proceedings, arguing that they can make a prima facie showing of eligibility for asylum based on changed circumstances and current conditions in Kosovo. Kole now claimed that the Albanian nationalists governing Kosovo would view him as a traitor for having fled the country before the war rather than joining the Kosovo Liberation Army to fight the Serbs, and that he also would be targeted for persecution because he had been a member of the DLK. Petitioners supported the motion to reopen with affidavits from Kole and his

brother, evidence of Mari's recent treatment for mental health and other medical issues, and various documents purportedly describing current conditions in Kosovo.

On March 23, 2009, the BIA denied the motion to reopen. It held that the motion was untimely filed after expiration of the ninety-day deadline for moving to reopen, and that petitioners' supporting evidence was insufficient to overcome the time-bar. The BIA concluded that the evidence did not show that conditions have materially changed such that petitioners are now eligible for relief from removal, or that the facts presented show exceptional circumstances warranting reopening sua sponte. Insofar as petitioners claimed that their former counsel provided ineffective assistance, the BIA held that petitioners failed to comply with the requirements of Matter of Lozada, 19 I&N Dec, 637 (BIA 1988). Petitioners timely filed a petition for review.

II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the BIA's decision to deny the motion to reopen. "As a general rule, motions to reopen are granted only under compelling circumstances." Guo v. Ashcroft, 386 F.3d 556, 561 (3d Cir. 2004). Our review is for abuse of discretion, "mindful of the 'broad' deference that the Supreme Court would have us afford." Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001). We will not disturb the BIA's decision unless petitioners show that it was arbitrary, irrational, or contrary to law. See Shardar v. Att'y Gen., 503 F.3d 308, 311 (3d Cir. 2007).

Where, as here, an applicant moves to reopen after expiration of the ninety-day deadline for filing such a motion, the applicant must rely upon evidence of "'changed

4

circumstances … in the country to which deportation has been ordered,'" and must show that "'such evidence is material and was not available and could not have been discovered or presented at the previous hearing.'" Zheng v. Att'y Gen., 549 F.3d 260, 265 (3d Cir. 2008) (quoting 8 C.F.R. § 1003.2(c)(3)(ii)); see Shardar, 503 F.3d at 313 ("[I]f the asylum applicant presents material evidence of changed country conditions that could not have been presented during the hearing before the IJ, his motion can be considered, even if … the motion is beyond the 90-day time limit for filing.").

We have reviewed petitioners' supporting evidence, and we are satisfied that the BIA committed no error in denying the motion to reopen. The BIA's decision reflects that it fully considered petitioners' evidence, and the record supports its stated reasons for rejecting that evidence as insufficient to show changed conditions in Kosovo.

Petitioners raise several arguments before this Court, which we address briefly. They first seem to challenge the IJ's decision in the underlying proceeding to reject Mari's credibility. Petitioners note that they supported the motion to reopen with evidence of mental health treatment that Mari has recently received in order to show that she continues to suffer from her experiences in Kosovo, and to establish that she was, in fact, sexually assaulted. Petitioners argue that the BIA erred in rejecting this evidence as irrelevant to the motion to reopen. Petitioners' Br. at 11-12. We conclude that the BIA was correct in its determination. While the IJ denied relief on the original asylum claim based in part on an adverse credibility determination, the BIA affirmed the denial of relief without reliance upon the credibility finding, and it did not rely upon credibility in

5

declining to reopen. The credibility issue, therefore, is no longer pertinent. Moreover, evidence of Mari's current condition simply has no bearing on whether the conditions in Kosovo have changed such that the proceedings in this case should be reopened.

Petitioners next contend that other evidence attached to their motion to reopen shows that conditions changed materially after their 2001 hearing before the IJ. They claim that the Democratic Party of Kosovo has come to power, and that it attacks those who fail to support the group, as well as those perceived as friendly to Serbs. Petitioners argue that Kole will be targeted by these "Albanian nationalists" because he was a member of the DLK, which supported the return of Serbs to their homes in Kosovo, and because he fled the country and did not join the Kosovo Liberation Army, former members of which are now associated with the ruling Democratic Party of Kosovo. Petitioners also contend that Kole's father, who remains in Kosovo, has received threats from Albanian nationalists since obtaining a copy of petitioners' wedding certificate in 2000, an act that apparently alerted local authorities to the fact that an ethnic Serb served as a witness to petitioners' 1996 wedding. Petitioners' Br. at 12-13.

Petitioners' evidence fails to support their allegations about the conditions in Kosovo. They rely upon an excerpt from a report issued by Amnesty International, but, as the BIA observed, this excerpt is "undated, incomplete, and partially illegible." Moreover, the excerpt provides no corroboration at all for the claim that Kole will be targeted on account of his former DLK membership or his decision to flee Kosovo without fighting the Serbs. Petitioners also rely upon various news articles and press

6

releases, but they nowhere have explained the relevance of these documents or shown how they substantiate their claims about current conditions in Kosovo.

The affidavit from Kole's brother was also properly discounted. Kole's brother merely states that an individual of Serbian ethnicity acted as a witness at petitioners' wedding, and that unidentified individuals made threats against Kole after Kole's father obtained a copy of petitioners' marriage certificate. Kole's brother, however, has no first-hand knowledge of threats against Kole, and the source of the information in his affidavit is unspecified. In addition, Kole's brother claims that callers made threats because Kole "in fact cooperated with Serbs," but Kole himself has never alleged such cooperation. The BIA also properly noted the absence of evidence from Kole's father, who allegedly experienced the threats against Kole, and who has remained in Kosovo unharmed. Petitioners made no showing of the father's unavailability to submit evidence in support of their new claims.

This record supports the BIA's finding that the evidence does not reflect a material change in conditions in Kosovo. While petitioners suggest that the BIA erred by "not considering all the evidence," Petitioners' Br. at 17, the BIA's decision reflects that it addressed the documents attached to the motion to reopen, and it offered specific and cogent reasons for denying relief.

Petitioners argue that they "deserve a second chance" to present testimony that they are entitled to asylum based on their fear of future persecution. Petitioners' Br. at 18. To be eligible for asylum, petitioners would need to establish that their fear of

persecution is well-founded, which requires both evidence of a genuine subjective fear that they would be persecuted in Kosovo, and objective evidence showing that "a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." Wong v. Att'y Gen., 539 F.3d 225, 232 (3d Cir. 2008) (quotation marks omitted). The objective evidence must establish that petitioners would be singled out for persecution, or that there is a pattern or practice of persecution on a protected ground of a group of persons similarly situated to petitioners. See id. The evidence presented here does not suggest that petitioners would be singled out for persecution, or that they have reason to fear a pattern or practice of persecution in Kosovo.

Finally, petitioners argue that their prior counsel provided inadequate assistance, Petitioners' Br. at 18, but they raise no challenge to the BIA's determination that they failed to comply with the Lozada requirements before asserting their claim against former counsel. Accordingly, the BIA properly refused to address this claim on the merits.

III.

We have considered petitioners' remaining contentions but conclude that they are without merit. For the foregoing reasons, we will deny the petition for review.