GLD-200                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1962
_____

MAXIE SEPANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A079-708-173)
Immigration Judge: Eugene Pugliese

_____

Submitted on a Motion for Summary Denial
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 3, 2011
Before:   AMBRO, CHAGARES AND COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed June 16,2011)
_____

OPINION
_____

PER CURIAM

        Petitioner Maxie Sepang, a citizen of Indonesia, entered the United States on a

non-immigrant visa in 1994, and stayed longer than permitted.   Removal proceedings

were initiated and Sepang applied for withholding of removal and for protection under

the Convention Against Torture.  At his merits hearing in March, 2004, Sepang, who is a

Christian, testified that the Indonesian government cannot or will not protect Christians

from violent Muslims. The Immigration Judge determined that Sepang failed to establish that it was more likely than not that he would either be tortured or have his life or freedom threatened in Indonesia on account of his Christian religion. In a decision dated August 22, 2005, the Board of Immigration Appeals affirmed.

In October, 2005, Sepang, through counsel, filed a motion to reopen, arguing, among other things, that conditions in largely Muslim Indonesia had worsened for Christians. The Board construed the motion as one for reconsideration and denied it as time-barred. In December, 2005, Sepang filed a second motion and he submitted additional evidence regarding changed country conditions in Indonesia. The Board construed this motion as one to reopen, and concluded that the evidence was insufficient to warrant reopening.

In August, 2006, Sepang filed a third motion to reopen, this time pro se. He argued that he was a member of an organization that had submitted special legislation to Congress that, if passed, would grant him and others like him lawful residency in the United States. The Board denied the motion as time- and number-barred.

In January, 2009, Sepang filed his fourth motion to reopen, this time seeking equitable tolling of the filing restrictions because of ineffective assistance of counsel. Sepang asserted that the attorney who represented him during his initial appearance before the IJ and the Board, and during his first two motions to reopen, (1) had not diligently pursued an asylum claim; and (2) had failed to present sufficient evidence of worsened country conditions. On March 10, 2009, the Board denied the fourth motion as time- and number-barred, determining that equitable tolling was not warranted because Sepang had not complied with the procedural requirements of <u>Matter of Lozada</u>, 19 I. &

2

N. Dec. 637 (BIA 1988). The Board further found that conditions in Indonesia had not worsened to the extent that would warrant reopening Sepang's case.

Sepang petitioned for review of the Board's March 10, 2009 decision, and we denied that petition in Sepang v. Att'y Gen. of U.S., 377 Fed. Appx. 271 (3d Cir. 2010), concluding that the Board did not abuse its discretion in denying the fourth motion to reopen. We noted that an allegation of ineffective assistance of counsel can serve as a basis for equitable tolling, but the Board requires the alien to comply with the procedural requirements of Lozada, a requirement that we held to be reasonable in Lu v. Ashcroft, 259 F.3d 127, 129 (3d Cir.2001). Sepang did not comply with any of the Lozada procedural requirements. Sepang, 377 Fed. Appx. at 273. Because equitable tolling was unwarranted, Sepang had to base his motion to reopen on 8 C.F.R. § 1003.2(c)(3)(ii) (90 day time limit for filing motion to reopen does not apply if alien seeks reopening "based on changed circumstances arising in the country of nationality ... if such evidence is material and was not available and could not have been discovered or presented at the previous hearing"). Sepang's evidence -- the State Department International Freedom Reports for 2004 and 2007 -- was inadequate to show that the treatment of Christians by Muslims in Indonesia had worsened since Sepang's merits hearing in 2004. Sepang, 377 Fed. Appx. at 273.

At issue now, on July 9, 2010, Sepang, through his California attorney, filed a motion for reconsideration of the Board's original August 22, 2005 decision, A.R. 7, arguing that his case should be reopened because he is a member of a disfavored (in Indonesia) group of Christians. In support, Sepang relied on two recent Ninth Circuit Court of Appeals' decisions, Wakkary v. Holder, 558 F.3d 1049, 1065 (9th Cir. 2009),

3

which applied the Ninth Circuit's disfavored group analysis to applications for withholding of removal, and Tampubolon v. Holder, 610 F.3d 1056 (9th Cir. 2010), which held that Christians, whether of Chinese descent or not, are a disfavored group. Sepang argued that the more widespread the threat to a disfavored group, the less individualized the threat of persecution has to be, see Sael v. Ashcroft, 386 F.3d 922, 925-27 (9th Cir. 2004). The government opposed Sepang's motion for reconsideration.

In a decision dated March 15, 2011, the Board denied Sepang's latest motion. The Board held that the motion for reconsideration was untimely, and alternatively the Board held that Ninth Circuit precedent was not binding in the Third Circuit, and that we – the Third Circuit Court of Appeals -- had previously rejected a "disfavored group" theory that would alter the burden of proof for Indonesian Christians of Chinese descent. The Board also concluded that Sepang had not otherwise demonstrated any factual or legal errors in its prior decision to warrant reconsideration.

Sepang has timely petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). The government has filed a motion for summary denial.

We will summarily deny the petition for review because no substantial question is presented by it, Third Circuit LAR 27.4 and I.O.P. 10.6. We review the Board's denial of a motion for reconsideration for an abuse of discretion. Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323 (1992). Under this deferential standard of review, we will not disturb the Board's decision unless it is arbitrary, irrational, or contrary to the law. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). "A motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1).

4

It "contests the correctness of the original decision based on the previous factual record…." See In re: O-S-G-, 24 I. & N. Dec. 56 (BIA 2006). In addition, a motion to reconsider "must be filed with the Board within 30 days after the mailing of the Board decision." See id. at 1003.2(b)(2).

The Board properly held that Sepang's motion for reconsideration was untimely, because it was not filed within 30 days of the Board's August 22, 2005 decision, see id. The Board thus did not abuse its discretion in denying the motion. The Board also properly held that Sepang did not demonstrate any factual or legal errors in its prior decision to warrant reconsideration, see 8 C.F.R. § 1003.2(b)(1). Specifically, we rejected use of a "disfavored group" theory applying to Chinese Christians in Indonesia in Lie v. Ashcroft, 396 F.3d 530 (3d Cir. 2005), stating that, with respect to Sael, we "disagree with the Ninth Circuit's use of a lower standard for individualized fear absent a 'pattern or practice' of persecution," id. at 538 n.4. In Wong v. Att'y Gen. of U.S., 539 F.3d 225, 235 (3d Cir. 2008), we held that the record did not compel the conclusion that there was a pattern or practice of persecution of ethnic Chinese Christians in Indonesia.

The Ninth Circuit has since extended Sael to applications for withholding of removal in Wakkary, 558 F.3d at 1065, and it held in Tampubolon, 610 F.3d at 1060-62, that Christians who are not of Chinese descent also are a disfavored group in Indonesia. Although Wakkary and Tampubolon arguably extend and build upon Sael, our previous rejection of the concept of a "disfavored group" of Chinese Christians in Indonesia and a corresponding lower standard for individualized fear absent a pattern or practice of persecution, is broad enough to encompass these recent decisions. With respect to Tampubolon's holding, we note that both Lie, 396 F.3d at 537, and Wong, 539 F.3d at

5

233, addressed inter-religious violence as well as harassment of the Chinese minority. In addition, as the Ninth Circuit itself pointed out in <u>Wakkary</u>, 558 F.3d at 1065, if an alien's membership in a disfavored group is relevant to the objective reasonableness of his fear in the asylum context, there is no reason in logic why that membership should not similarly be relevant in the withholding context. The Board thus did not abuse its discretion in declining, in view of controlling precedent in this circuit, to consider <u>Wakkary</u> and <u>Tampubolon</u>.

For the foregoing reasons, we will summarily deny the petition for review.